44851. FOREST SERVICES, INC. v. FIDELITY & CASUALTY COMPANY OF NEW YORK et al.

ARGUED OCTOBER 6, 1969—DECIDED NOVEMBER 5, 1969.

*Melton, McKenna & House, Buckner F. Melton, Andrew W. McKenna,* for appellant.

*Harris, Russell & Watkins, John B. Harris, Jr.,* for appellees.

DEEN, Judge. Since the leases in question had each over a year of remaining life at the time of the alleged parol agreement, and since the only agreement charged on the part of the surety company was to answer for the default of the contractor, it is obvious that, if made, it comes within the Statute of Frauds unless saved by some exception thereto. *Code* § 20-401 (2), (5). "Where such a contract is provable by parol, it must, in order to be enforceable, be certain and definite in all essential particulars, and established so clearly and satisfactorily as to leave no reasonable doubt in the minds of the jury." *Gragg v. Hall,* 164 Ga. 628 (4) (139 SE 339). The conversation on which the contract in question is sought to be based took place between Martin, president of Forest Services, Inc., and Nelson of John Deere Company on the one hand, and Gunn, representing the surety company, on the other. Gunn denied that any question came up except that of clearing up the default in Stradtman's equipment leases. Martin testified: "We reviewed the amount past due, both on the leases and the repair account, and Mr. Gunn told us that within a week his company would take these obligations and bring them current and on the repair bills he would have to approve all repairs, that he would make the payments on the equipment. Our policy is at the end of 60 days that we have to repossess the equipment if it is not paid, and Mr. Gunn assured us that he would make these payments and we believed him and he did. He brought the payments current within 1 week and everything was fine at that time. . . I believe he said that he would continue to make the payments on a current basis. These may not be his exact words." He was then asked: "Now, Mr. Gunn did not say, I take it, at that time that he would make the

full 36 months' lease payments, did he?" to which Martin replied: "That was our understanding of the conversation."

The surety company did continue to make payments on a current basis so long as the equipment was needed by it in its activity required by its performance bond with the City of Macon. Under that bond it was liable to the plaintiff for the monthly rental payments and repair services on which the contractor had defaulted and, if it continued to use the equipment on the project, it was liable for such time as it retained possession for the fair rental value thereof. *Moore v. Standard Accident Ins. Co.*, 48 Ga. App. 508, 512 (173 SE 481). This is exactly what it in fact paid to the plaintiff prior to the return of the machinery, and it is all that the plaintiff's president actually testified was promised by this defendant. Martin's statement as to what his and Nelson's understanding of the agreement was, in view of the actual statements that what Gunn said was that he would bring and keep the payments current is entirely conclusory in nature. Since it was necessary in any event for Gunn to bring and keep the payments current while the machinery was in use on the city contract in the execution of the performance bond, and since there is no indication that the plaintiff would have insisted on the immediate return of the equipment as an alternative to the surety company becoming bound for the full 36-month term of the lease, it does not appear that what was done by Fidelity & Casualty was done on an assignment of the lease to it, or that any detriment accrued to Forest Services, Inc., by accepting past due and current rental payments in lieu of repossessing the equipment at that time. Indeed, the testimony was to the effect that Martin and Nelson went to Gunn for the purpose of collecting the past due payments, and that they succeeded in this endeavor. But, even construing the understanding of the parties in accordance with Martin's interpretation, and even construing the acts of the defendant in continuing to use the equipment and making current payments on it as a performance of the oral contract urged by the plaintiff rather than as acts necessary to comply with its performance bond to the city, this will not take the agreement out of the Statute of Frauds unless the

part performance is such "as would render it a fraud of the party refusing to comply, if the court did not compel a performance." *Code* § 20-402 (3). "While an oral contract . . . within the Statute of Frauds may be taken out by part performance thereof where one party to the contract performs some act essential to the performance of the contract which results in loss to him and benefit to the other party thereto, the mere fact that one party entered upon the performance of the agreement . . . which shows no loss to him or benefit to the other party, was not sufficient to take the contract out of the operation of the statute." *Yarbrough v. Hi-Flier Mfg. Co.*, 63 Ga. App. 725 (2) (12 SE 133). The *Yarbrough* case is concerned with a contract of employment, but the basic principle applies to all cases under this exception. Here, Fidelity & Casualty Company was liable in any event for the past due payments on equipment used in the performance of the city contract. While it continued to use them, it was also liable for the reasonable rental value during the time of use. There is no suggestion that current payments did not coincide with reasonable rental value. There is no suggestion that the plaintiff was in any manner damaged by not repossessing and selling the equipment at the time of the first default by Stradtman Georgia Construction rather than at the time of the second default, which occurred when the machinery was no longer needed for the Macon contract. The contractor remained bound on the lease as it was at the beginning; the surety company used the equipment for a period of time and paid the reasonable value of the use for that time. "The performance referred to in the statute is something substantial and essential to the contract which results in a benefit to one party and a detriment to the other." *Norman v. Nash*, 102 Ga. App. 508 (3) (116 SE2d 624). No such benefit or detriment appears here. Accordingly, the trial court did not err in granting summary judgment to the defendant Fidelity & Casualty Company.

*Judgment affirmed. Bell, C. J., and Eberhardt, J., concur.*