In the Matter of James D. SANDERS, Mary Ann Sanders, Debtors.

James D. SANDERS, Mary Ann Sanders, Plaintiffs,

v.

AMSOUTH MORTGAGE COMPANY, INC., Defendant.

Bankruptcy No. 488–01081.
Adv. No. 488–0079.

United States Bankruptcy Court, S.D. Georgia, Savannah Division.

June 15, 1989.

M.E. Geary, for plaintiffs.

James L. Coursey, Jr., Savannah, for defendant.

## MEMORANDUM AND ORDER

LAMAR W. DAVIS, Jr., Chief Judge.

Plaintiffs, Chapter 13 Debtors, seek to set aside the foreclosure sale conducted by Amsouth Mortgage company, Inc., under power of sale. The parties stipulate the relevant underlying facts including:

1) On August 9, 1977 a promissory note in the principal amount of $17,550.00 and a deed to secure debt were executed which conveyed the real property and improvements located at 1208 Hiawatha Lane, Austell, Georgia, to Amsouth Mortgage Company, Inc. ("Amsouth"). The original promissory note was subsequently assigned to James D. Sanders.

2) James D. Sanders was served by certified mail with a notice of foreclosure. On October 4, 1988, at 11:00 a.m., a foreclosure sale was conducted pursuant to proper notice. The property in question sold for $17,651.50 to Curtis M. Dowling, an innocent third party.

3) On October 5, 1988, James D. Sanders and Mary Ann Sanders filed a Chapter 13 petition.

4) On October 17, 1988, a deed under power of sale was executed and delivered to the purchaser. On October 18, 1988, said deed under power of sale was filed and

recorded in the Clerk's Office of the Superior Court of Cobb County.

## CONCLUSIONS OF LAW

The issue in this case is at what point in the foreclosure process—at the time of a foreclosure; upon expiration of the redemption period; upon transfer of the deed and payment of consideration; or upon recordation of the deed—does the right to cure default under 11 U.S.C. Section 1322(b)(5) terminate.[1] The Eleventh Circuit has addressed this issue only to the extent that it has held: "residential mortgages that would otherwise permit the lender to declare the entire debt presently due, may be modified by the plan to cure the default and reinstate regular installment payments." *In re Terry,* 780 F.2d 894, 896 (11th Cir.1985). The Eleventh Circuit has not, however, determined the point at which the right to cure a default on a home mortgage under Section 1322(b)(5) terminates. The issue has been confused to some extent by the approach taken in *In re Glenn,* 760 F.2d 1428 (6th Cir.1985), cert. denied, 474 U.S. 849, 106 S.Ct. 144, 88 L.Ed.2d 119 (1985), wherein the Sixth Circuit adopted a pragmatic approach and chose the date of the sale of the mortgaged property as the cutoff date of the statutory right to cure defaults. The Sixth Circuit chose this date for a number of reasons. See *Id.* at 1435–36. In so doing, the Sixth Circuit acknowledged that: "we avoid any effort to analyze the transaction in terms of state property law. Modern practice varies so much from state to state that any effort to satisfy the existing concepts in one state may only create confusion in the next." *Id.* at 1436. The Sixth Circuit's avoidance of state property law analysis appears to be an effort to create a federal common law to supersede state law property rights, when Congress has not chosen to enact such a rule. Except for limited exceptions,[2] "Congress has generally left the

determination of property rights in the assets of a bankrupt's estate to state law ... Property interests are created and defined by state law. Unless some federal interest requires a different result, there is no reason why such interest should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding. Uniform treatment of property interests by both state and federal courts within a State serves to reduce uncertainty, to discourage forum shopping, and to prevent a party from receiving 'a windfall merely by reason of a happenstance of bankruptcy'." *Butner v. United States,* 440 U.S. 48, 54–55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979) (citation omitted). In its analysis, the Supreme Court clearly recognized that a determination of property rights and assets under state law may lead to different results in different states. The Third Circuit in *Matter of Roach,* 824 F.2d 1370, 1373 (3rd Cir.1987), analyzed Section 1322(b) in the context of state law and rejected the Sixth Circuit's uniform federal common law approach. The Third Circuit's approach is well reasoned and therefore, adopted herein. See *Id.* at 1373–74. Accordingly, I hold that Section 1322(b) must be read in the context of Georgia State law, not federal common law.

Under Georgia law, "[i]t is the general rule that a sale under a *regularly* exercised power in a security deed or mortgage is equivalent to a foreclosure proceeding and not only *extinguishes the right of redemption,* but divests all junior mortgages and other junior incumbrances on the property." *Federal Land Bank of Columbia v. Bank of Lenox,* 192 Ga. 543, 546, 16 S.E.2d 9, 12 (1941) (emphasis added). Under the *Bank of Lenox* decision, the inquiry to determine if the right of redemption has been extinguished would be into whether a sale occurred under a "regularly exercised power" in the security deed not whether

---

**1.** 11 U.S.C. Section 1322(b)(5) provides in relevant part that "the plan may ... provide for curing any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the

date on which the final payment under the plan is due."

**2.** See the avoiding powers of 11 U.S.C. Sections 542–549.

the sale was ever "consummated".[3] The question of whether the sale was under a "regularly exercised power" in a security deed is in part determined by whether the sale was conducted in compliance with the advertising and notice requirements of O.C. G.A. Section 44–14–162 et al. which incorporate the provisions governing sheriff's sales, O.C.G.A. Section 9–13–140 et al., the provisions dealing with the place, time and manner of the auction, O.C.G.A. Section 9–13–160 et al. and reference to the terms of the power of sale in the security deed.

The finding that the critical determination is whether the foreclosure sale was regularly exercised rather than a question of whether the sale was ever consummated, finds support in Georgia case law and more recent bankruptcy decisions in this state. In *Carrington v. Citizens Bank of Waynesboro*, 144 Ga. 52, 53, 85 S.E. 1027 (1915) the Georgia Supreme Court held that: "A sale under power in a security deed divests the title of the grantor, and he has no legal right several days thereafter, on tender of the amount of the debt secured by the deed to the grantee, who is purchaser at the sale, to demand a conveyance of the land or a cancellation of the security deed. Where a sale of land is made under a power contained in a security deed ... *the grantor can not defeat the purchaser's right to have the sale fully consummated, by tender of the amount of his indebtedness to the grantee before the actual execution of the deed* pursuant to the terms of the sale" (emphasis added). This quoted passage from *Carrington* lends strong support to the proposition that the debtor's equity of redemption is extinguished under state law at the time a valid foreclosure sale under power of a security deed, if properly advertised and conducted. *Pindar, Georgia Real Estate Law and Procedure*, § 21–89 (3rd Ed.1986). Also see, *West Lumber Co. v. Schnuck*, 204 Ga.

827, 835, 51 S.E.2d 644 (1949). (A tender to satisfy the full amount of indebtedness made on the day following the sale of property under the power of sale contained in the security deed is *not* effective as against the purchaser at the sale.); *Heard v. Decatur Federal Savings & Loan*, 157 Ga.App. 130, 134, 276 S.E.2d 253, 256–57 (1981); ("[W]here the property was auctioned to the highest bidder 'for cash' the sale was not thereafter rendered invalid by a subsequent arrangement [between the bidder and the seller] ... *As a sale to the highest bidder constituted a complete sale, the plaintiff [debtor] had no right to redeem it thereafter by contending it was merely a contingent sale and not a cash sale* ... in which event plaintiff might pay off the indebtedness prior to the execution of the deed") (emphasis added); *McKinney v. South Boston Savings Bank*, 156 Ga. App. 114, 116, 274 S.E.2d 34, 36 (1980) ("Appellant [grantor of deed to secure debt] became tenant at sufferance of appellee [grantee of deed to secure debt and high bidder at foreclosure sale] by the terms of the security deed and operation of law *when the appellee bid in the property at the foreclosure sale*.") (emphasis added).

Accordingly, under Georgia law debtor's equity of redemption terminates upon sale to the highest bidder on the date the foreclosure sale is held. In accord: *In re Pearson*, 75 B.R. 254, 255 (Bankr.N.D.Ga.1985) (Drake, J.); *Matter of Park North Partners, Ltd.*, 72 B.R. 79, 81 (Bankr.N.D.Ga. 1987) (Kahn, J.). Therefore, the Debtors' right to redemption under state law expired on October 4, 1988, leaving the Debtors with no interest in the property on October 5, 1988, the date they filed their Chapter 13 petition. Accordingly, the property was not property of the estate at the time the petition was filed, and, therefore, the Debt-

---

**3.** In *Federal Deposit Insurance Corp. v. Dye,* 642 F.2d 837 (5th Cir.1981). The Fifth Circuit analyzed whether a challenged foreclosure sale was either void or in the alternative never "consummated" so as to allow FDIC to sue for the outstanding balances due on the notes which were secured by the real property in question. The Fifth Circuit reasoned that until a deed was

transferred and consideration passed that the sale itself had not occurred and that there is only a contract to buy and sell. *Id.* at 843. The Fifth Circuit did not address the issue presented herein: When is the debtor's right of redemption extinguished? See *In re Gray,* 37 B.R. 532, 536 (Bankr.N.D.Ga.1984) (Drake, J.).

ors have no statutory right under 11 U.S.C. Section 1322(b)(5) to cure the default and maintain payments through a Chapter 13 plan.

## ORDER

Pursuant to the foregoing Findings of Fact and Conclusions of Law IT IS THE ORDER OF THIS COURT that the Debtors' Motion to set aside the October 4, 1988 foreclosure conducted by Amsouth Mortgage Company, Inc., is denied.