In the Matter of Terry Gene MORGAN and Pamela Carter Morgan, Debtors.

Loran LEGGETT and Ralph D. Herin, Movants,

v.

Terry Gene MORGAN and Pamela Carter Morgan, Debtors,

and

Camille Hope, Trustee.

Bankruptcy No. 90–51184.

United States Bankruptcy Court,
M.D. Georgia,
Macon Division.

June 15, 1990.

Bruce M. Hofstadter, Hofstadter and Stevenson, Macon, Ga., for debtors.

Cater C. Thompson, Jones, Cork & Miller, Macon, Ga., for movants.

Camille Hope, Macon, Ga., Chapter 13 Trustee.

Lewis E. Hassett, Aiken & Ward, Atlanta, Ga., for Liberty Sav. Bank, FSB.

MEMORANDUM OPINION

ROBERT F. HERSHNER, Jr., Chief Judge.

Loran Leggett and Ralph D. Herin, Movants, filed a motion for relief from the automatic stay of the Bankruptcy Code on May 9, 1990. Movants seek to evict Terry Gene Morgan and Pamela Carter Morgan, Debtors, from their residence. A hearing was held on May 29, 1990. The Court, having considered the evidence presented and the arguments of counsel, now publishes this memorandum opinion.

Debtors assumed a promissory note and a deed to secure debt in favor of Macon

Federal Savings and Loan Association. Liberty Savings Bank, FSB, is the successor to Macon Federal Savings and Loan Association. Debtors defaulted on the promissory note, and Liberty Savings Bank began foreclosure proceedings. The foreclosure sale was conducted on May 1, 1990.

Debtors filed a petition under Chapter 7 of the Bankruptcy Code at 11:40 a.m. on May 1, 1990.[1] Debtors contend their petition was filed before the foreclosure sale was conducted. The bankruptcy filing triggered the automatic stay of the Bankruptcy Code[2] and created a bankruptcy estate.[3] A foreclosure conducted after the bankruptcy filing is void. The issue before the Court is whether the property foreclosed upon was property of the bankruptcy estate when Debtors' bankruptcy petition was filed.

Mike Bledsoe, attorney at law, conducted the foreclosure sale. He testified that he telephoned Mr. Morgan at 9:00 a.m. on May 1, 1990, from the Bibb County Courthouse. He told him that he was in Macon to conduct the foreclosure unless Debtors paid $5,942.20 to reinstate the loan before 10:30 a.m. Mr. Bledsoe testified that Debtors failed to come to the courthouse and that he conducted the foreclosure at 10:30 a.m. He testified that the highest bidder was Ralph Herin who bid $55,682.68. Mr. Bledsoe testified that, immediately after the sale, he, Mr. Herin, and Mr. Leggett walked to Liberty Savings Bank where he was given an "official check" for the bid amount before 10:45 a.m.

Mr. Herin testified that he and Mr. Leggett arrived at the Bibb County Courthouse a few minutes after 10:00 a.m. Mr. Herin testified that the foreclosure sale was conducted at 10:30 a.m. and that he was the highest bidder. Mr. Herin testified that, immediately after the sale, he, Mr. Bledsoe, and Mr. Leggett went to Liberty Savings Bank where he obtained a check for the bid amount. Mr. Herin testified that he gave the check to Mr. Bledsoe a few minutes after 10:30 a.m. Mr. Herin and Mr. Leggett then went to Debtors' home between 11:50 a.m. and 1:30 p.m. and told Mrs. Morgan that Mr. Herin had purchased the house. Mr. Herin testified that Mrs. Morgan told him, "No, we took care of that this morning." Mr. Herin and Mr. Leggett then left Debtors' home.

Bernice Peake, a teller with Liberty Savings Bank, testified that Mr. Bledsoe, Mr. Herin, and another man came into the bank on May 1, 1990. She testified that she made an account balance inquiry on Mr. Herin's account at 10:37 a.m. She then prepared an "official check" for $55,682.68 payable to "Aiken & Ward Attorneys." She gave the check to Mr. Herin, but does not know what Mr. Herin did with the check.

Mrs. Morgan testified that Mr. Herin and Mr. Leggett came to her home at 1:19 p.m. on May 1, 1990. Mr. Herin told her that he had purchased the home at foreclosure. She testified that Mr. Herin stated that "they must have waited until 12:15 p.m. to conduct the foreclosure." Mr. Herin and Mr. Leggett left when she told them that Bruce Hofstadter was her attorney.

Mr. Morgan testified that Mr. Bledsoe telephoned him at his job between 9:30 a.m. and 10:30 a.m. on May 1, 1990, and told him the amount needed to reinstate the loan. He testified that Mr. Bledsoe did not state what time he would conduct the foreclosure.

The only factual question is whether the foreclosure sale was conducted before Debtors filed their bankruptcy petition at 11:40 a.m. The Court, having heard the testimony and having observed the demeanor of the witnesses, is persuaded that the foreclosure sale was conducted at 10:30 a.m. and that the consideration was paid before Debtors filed their bankruptcy petition.

---

1. This Chapter 7 case was converted to a case under Chapter 13 of the Bankruptcy Code on June 4, 1990. Because of the conversion, Camille Hope, Standing Chapter 13 Trustee, was substituted for J. Coleman Tidwell as the trustee.

2. 11 U.S.C.A. § 362 (West 1979 & Supp.1990).

3. 11 U.S.C.A. § 541(a) (West 1979 & Supp.1990).

■ The Court now turns to the question of whether Debtors had any interest in their residence when their bankruptcy petition was filed. Section 541(a)(1) of the Bankruptcy Code[4] provides that a bankruptcy estate includes all legal and equitable interests of the debtor in property as of the commencement of the case. Debtors' joint bankruptcy case was commenced when they filed their petition.[5]

■ Under Georgia law, a deed to secure debt transfers legal title to the property conveyed to the grantee and the grantor retains equitable title with the equitable right of redemption by payment of the debt. *See In re Wilder,* 22 B.R. 294, 297 (Bankr.M.D.Ga.1982); *West Lumber Co. v. Schnuck,* 204 Ga. 827, 51 S.E.2d 644, 649 (1949). Redemption can be accomplished only by payment in full of the secured debt. *Wynndam Court Apartment Co. v. First Federal Savings & Loan Ass'n of Atlanta,* 204 Ga. 501, 50 S.E.2d 611, 615 (1948).

■ This equitable right of redemption is a property right of the debtor within the jurisdiction of the bankruptcy court. *Jim Walter Homes, Inc. v. Saylors (In re Saylors),* 869 F.2d 1434, 1437 (11th Cir.1989).

■ State property law generally determines what property rights are in the bankruptcy estate. *Butner v. United States,* 440 U.S. 48, 54–55, 99 S.Ct. 914, 917–918, 59 L.Ed.2d 136 (1979).

■ In Georgia, a properly conducted foreclosure cuts off the grantor's equitable right of redemption. In *Cummings v. Johnson,*[6] the Supreme Court of Georgia stated:

A sale under the powers contained in a deed to secure debt divests the grantor of all title, and right of equity of redemption, to the lands described in the deed.

129 S.E.2d at 763. *See also Heard v. Decatur Federal Savings and Loan Ass'n,* 157 Ga.App. 130, 276 S.E.2d 253, 257 (1980) (a sale under power to the highest bidder constitutes a complete sale and the grantor has no right to redeem it thereafter by contending it was merely a contingent sale and not a cash sale in which event the grantor might pay off the debt prior to execution of the deed).

In *Sanders v. AmSouth Mortgage Co. (In re Sanders)*[7] and in *Pearson v. Fleet Finance Center, Inc. (In re Pearson),*[8] the foreclosure sale was conducted before the debtor filed his Chapter 13 case. The deed under power of sale was not executed until after the bankruptcy filing. The bankruptcy courts, relying on the Supreme Court of Georgia's decision in *Carrington v. Citizens Bank of Waynesboro,*[9] held that the debtor's equity of redemption expires when the highest bid is received at the foreclosure sale even though the foreclosure deed is not executed until after the bankruptcy petition is filed. The courts, therefore, concluded that the property foreclos-

---

**4.** *See* 11 U.S.C.A. § 541(a) (West 1979 & Supp. 1990). This section provides:

(a) The commencement of a case under section 301, 302, or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held:

(1) Except as provided in subsections (b) and (c)(2) of this section, all legal or equitable interests of the debtor in property as of the commencement of the case.

11 U.S.C.A. § 541(a)(1) (West 1979 & Supp. 1990).

**5.** 11 U.S.C.A. § 302 (West 1979).

**6.** 218 Ga. 559, 129 S.E.2d 762 (1963).

**7.** 108 B.R. 847 (Bankr.S.D.Ga.1988).

**8.** 75 B.R. 254 (Bankr.N.D.Ga.1985).

**9.** 144 Ga. 52, 85 S.E. 1027 (1915). In *Carrington v. Citizens Bank of Waynesboro,* the Supreme Court of Georgia stated:

A sale under power in a security deed divests the title of the grantor, and he has no legal right several days thereafter, on tender of the amount of the debt secured by the deed to the grantee, who is purchaser at the sale, to demand a conveyance of the land or a cancellation of the security deed.

Where a sale of land is made under a power contained in a security deed, and by permission of the grantor contained in the deed the grantee purchases the land at such sale, the grantor can not defeat the purchaser's right to have the sale fully consummated, by tender of the amount of his indebtedness to the grantee before the actual execution of the deed pursuant to the terms of the sale.

144 Ga. at 53, 85 S.E. 1027.

ed upon was not property of the estate at the time the bankruptcy petition was filed.

The Court has considered the opinion of the former United States Court of Appeals for the Fifth Circuit in *Federal Deposit Insurance Corporation v. Dye.*[10] In *Dye,* the circuit court stated:

> We are persuaded by FDIC's argument, however, that even if the sales were not void, they were never consummated: no deed was transferred and no consideration passed. Georgia law treats the high bid at a foreclosure sale as forming a contract: the bidder contracts with the debtor to purchase the property at the bid price. *See Moody v. Mendenhall,* 238 Ga. 689, 234 S.E.2d 905 (1977) (suit by debtor to enforce specific performance by bidder). Until the deed is transferred the sale itself has not occurred; there is only a contract to buy and sell.

642 F.2d at 843.

The Court has carefully considered Judge Drake's analysis of the *Dye* decision in *Lincoln Financial Corp. v. Gray (In re Gray).*[11] In *In re Gray,* the court questioned whether *Dye* stands for the proposition that a debtor's equity of redemption survives the foreclosure sale.[12]

This Court notes that the issue in *Dye* was whether a creditor can sue on the underlying promissory note after a valid foreclosure sale when the consideration has not been paid and the foreclosure deed has not been transferred. The former Fifth Circuit did not address whether the grantor's equity of redemption is cut off or what rights, if any, the grantor has in the property after the foreclosure sale. The Court is persuaded that *Dye* does not control the outcome of Movants' motion for relief in the case at bar.

The Court is persuaded that Debtors' equity of redemption expired before their bankruptcy petition was filed. Movants and Debtors agree that the foreclosure deed was not executed before the bankruptcy petition was filed. In *Dye,* the former Fifth Circuit stated that until the foreclosure deed is transferred, the sale itself has not occurred.[13] Movants, under the *Dye* analysis, had a contract with Liberty Savings Bank to buy the property. Movants fully complied with their part of the contract by giving Mr. Bledsoe an "official check." The Court is persuaded that Debtors residence was not property of the estate when the bankruptcy petition was filed.

Movants ask the Court for relief from the automatic stay so that they can evict Debtors from the property. In *Remy v. Citicorp Person–To–Person Financial Center, Inc.,*[14] the court stated:

> Where the grantor, or his privy, in a security deed remains in possession of the premises after lawful foreclosure of the deed, he is a tenant at sufferance and is subject to be summarily dispossessed by the purchaser at the foreclosure sale, or by his privy.

285 S.E.2d at 77.

The Court is persuaded that Movants should have relief from the automatic stay to bring a dispossessory action against Debtors in the appropriate forum.

An order in accordance with this memorandum opinion will be entered this date.

**10.** 642 F.2d 837 (5th Cir. Unit B 1981).

**11.** 37 B.R. 532 (Bankr.N.D.Ga.1984).

**12.** *Id.* at 535 and 537.

**13.** 642 F.2d at 843.

**14.** 159 Ga.App. 726, 285 S.E.2d 76 (1981).