351 B.R. 251 (2006)
In the Matter of Arthur W. HOWARD, Debtor.
Arthur W. Howard, Plaintiff
v.
The Citizens Bank of Cochran and Herbert Davis, Defendants.
Bankruptcy No. 05-53602 RFH, Adversary Proceeding No. 05-5160.
United States Bankruptcy Court, M.D. Georgia, Macon Division.
September 21, 2006.
*252 Johnny R. Pannell, Hawkinsville, GA, for Plaintiff.
Emmett L. Goodman, Jr., Macon, GA, for The Citizens Bank of Cochran.
Alvin W. Arnold, Cochran, GA, for Herbert Davis.

MEMORANDUM OPINION
ROBERT F. HERSHNER, JR., Chief Bankruptcy Judge.
Arthur W. Howard, Plaintiff, filed on June 28, 2006, a motion for summary judgement. The Citizens Bank of Cochran, Defendant, (the "Bank") filed on June 30, 2006, a motion for summary judgment. Herbert Davis, Defendant, ("Mr. Davis") filed on July 18, 2006, a motion for sum *253 mary judgment.[1] The Court, having considered the record and the arguments of counsel, now publishes this memorandum opinion on the cross-motions for summary judgment.
["The] filing of cross-motions [for summary judgment] does not establish that there is no material fact in issue and that a trial is therefore unnecessary. The Court must still make an independent evaluation as to the merits of each party's motion." Donovan v. District Lodge No. 100, International Assoc. of Machinists and Aerospace Workers, AFL-CIO, 666 F.2d 883, 886 (5th Cir. Unit B, 1982).
"The court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard. Both motions must be denied if the court finds that there is a genuine issue of material fact." 10A Charles A. Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice and Procedure: Civil 3d, § 2720, pp 335-36 (1998).
The following facts are not in dispute. Plaintiff owned and was the sole occupant of a residence on Gregory Drive, Hawkinsvine, Georgia. Hawkinsville is a city in Pulaski County, Georgia.
Plaintiff obtained a loan from the Bank. Plaintiff signed a promissory note dated October 29, 2001, in favor of the Bank. The principal amount of the loan was $14,931.94. Plaintiff was to pay the obligation by making 74 monthly payments. Plaintiff signed a Deed With Power Of Sale To Secure Debt giving the Bank a security interest in his residence. The deed to secure debt provides in part that it secures the original indebtedness and any renewals or extensions thereof.
Plaintiff "renewed" his October 2001 obligation by signing a promissory note dated September 11, 2003, in favor of the Bank. The principal amount of the new obligation was $17,216.58. Plaintiff was to pay the obligation by making 72 monthly payments. The obligation is secured by the deed to secure debt dated October 29, 2001.
Plaintiff failed to make the payments on his obligation dated September 11, 2003. The Bank employed Scott B. Thompson, Sr., attorney at law, to foreclose on the deed to secure debt. Notice of the foreclosure was published in the local newspaper. Mr. Thompson sent via certified mail a notice of the pending foreclosure to Plaintiff. The United States Postal Service attempted but was unable to deliver the notice to Plaintiff. The Postal Service returned the notice to Mr. Thompson. Plaintiff testified by deposition that he did not receive the notice and did not know about the pending foreclosure. The envelope in which the notice was sent shows that someone marked through the city, state, zip code, and bar code portions of Plaintiffs address.[2]
Defendant / Bank / Creditor Exhibit 1.
Herbert Davis is the president of R & S Farms, Inc. Mr. Davis has, over the years, purchased about a dozen properties at foreclosure. Mitchell E. Cobb was, at the relevant time, a banking officer at the Bank. Mr. Davis asked Mr. Cobb about certain property the Bank was advertising for foreclosure in Bleckley County. Mr. Cobb mentioned that the Bank would also *254 be foreclosing on a property in Pulaski County (Plaintiffs residence). Mr. Davis asked Mr. Cobb what time the foreclosure would take place. Mr. Cobb told Mr. Davis that Mr. Thompson was handling the foreclosure. Mr. Thompson told Mr. Davis that he would conduct the foreclosure in Bleckley County around 2 P.M. and that he would then conduct the foreclosure in Pulaski County.[3] Mr. Davis testified by deposition that he did not have any preforeclosure arrangements of any kind with Mr. Cobb or the Bank.
On September 6, 2005,[4] Mr. Thompson, on behalf of the Bank, conducted a foreclosure of certain property at the courthouse in Bleckley County. Mr. Davis, on behalf of R & S Farms, made the highest bid. A representative of the Bank, Chuck Harwell, was present at the foreclosure. Mr. Harwell asked Mr. Davis how he was going to pay. R & S Farms has a checking account at the Bank. Mr. Davis told Mr. Harwell that the funds were on deposit at the Bank and that he could give the Bank a check or that the Bank could draft the checking account. Mr. Davis told Mr. Hartwell that if he was the highest bidder at the foreclosure in Pulaski County that he "would handle it the same way".
After the foreclosure in Bleckley County was concluded, Mr. Thompson and Mr. Davis traveled in separate automobiles to the courthouse in Pulaski County. Mr. Thompson conducted a foreclosure on Plaintiffs residence. Mr. Thompson made a bid on behalf of the Bank for $19,000. Mr. Davis, on behalf of R & S Farms, made a bid of $19,001. There were no other bids. The foreclosure was concluded just before 3 P.M.
Mr. Davis told Mr. Thompson that he was "ready to do it now." Mr. Thompson told Mr. Davis that he would prepare the foreclosure deed[5] when he returned to his office that afternoon. Mr. Davis contacted Mr. Cobb by telephone. Mr. Davis arranged to meet Mr. Cobb at the Bank the next morning, to pay the amount of the foreclosure bid, and to receive the foreclosure deed. R & S Farms had sufficient funds in its checking account at the Bank to honor its bid on Plaintiffs residence. It is undisputed that Mr. Davis; on behalf of R & S Farms, did not give Mr. Thompson, Mr. Cobb, or the Bank a check for the foreclosure bid on September 6, 2005.
During the afternoon of September 6, 2006, Mr. Davis purchased property insurance on Plaintiffs residence. Mr. Davis went to Plaintiffs residence about 6 P.M. and told Plaintiff that he had purchased the residence at foreclosure. Plaintiff stated that his residence could not sell at foreclosure because he had filed for bankruptcy relief.[6]
Plaintiff met with his attorney the next morning. Plaintiff filed a petition under Chapter 13 of the Bankruptcy Code on September 7, 2005.
Mr. Davis had agreed to go to the Bank on September 7, 2005, to pay the foreclosure bid, and to receive a foreclosure deed on Plaintiffs residence. Mr. Davis and the Bank learned that Plaintiff had filed for *255 bankruptcy relief. Mr. Davis did not go to the Bank.
On September 16, 2005, R & S Farms gave the Bank a check for the amount of the foreclosure bid, $19,001. The Bank gave R & S Farms a foreclosure deed on Plaintiffs residence. R & S Farms's check cleared its account at the Bank on September 19, 2035.
It is undisputed that (1) at all relevant times R & S Farms had sufficient funds in its account at the Bank to pay the foreclosure bid; (2) R & S Farms gave the Bank a check for the foreclosure bid after Plaintiff filed for bankruptcy relief; and (3) the Bank gave R & S Farms a foreclosure deed after Plaintiff filed for bankruptcy relief.
Plaintiff filed on November 16, 2005, a Complaint To Set Aside Wrongful Foreclosure And Complaint For Declaratory Relief. Plaintiff contends that the foreclosure is void and that his residence is property of his bankruptcy estate.
Two issues are presented in the motions for summary judgment. First, whether Plaintiffs interest in his residence was terminated before Plaintiff filed for bankruptcy relief.[7] Second, whether the foreclosure sale was properly conducted.[8]
"Under Georgia law, a deed to secure debt transfers legal title to the property conveyed to the grantee and the grantor retains equitable title with the equitable right of redemption by payment of the debt. Redemption can be accomplished only by payment in full of the secured debt. This equitable right of redemption is a property right of the debtor within the jurisdiction of the bankruptcy court. . . . In Georgia, a properly conducted foreclosure cuts off the grantor's equitable right of redemption." Leggett v. Morgan, (In re Morgan), 115 B.R. 399, 401 (Bankr.M.D.Ga.1990).
Federal law determines whether an interest in property is property of the bankruptcy estate. The nature and existence of the interest is determined by state law. Witko v. Menotte, (In re Witko), 374 F.3d 1040, 1043 (11th Cir.2004). A debtor's equitable right of redemption is property of the bankruptcy estate. Commercial Federal Mortgage Corp. v. Smith, (In re Smith), 85 F.3d 1555, 1557-58 (11th Cir.1996). Whether a debtor's equitable right of redemption is terminated by a foreclosure sale is a question of state law.
Neither Plaintiff, the Bank, nor Mr. Davis has cited a controlling appellate state court or federal court decision identifying the specific event in a foreclosure proceeding that terminates a debtor's equity of redemption. In the case at bar, the Court is persuaded that the deed to secure debt answers the question.
Plaintiff signed a deed to secure debt in favor of the Bank.[9] The last page of the deed to secure debt provides in part:
The first party [Plaintiff] hereby covenants and agrees with the second party [the Bank]: *256 [After default the second party may sell the property at public outcry to the highest bidder for cash]; and the second party, representative or assignee, so desiring, may bid at said sale and may make to the purchaser or purchasers of the said property good and sufficient title in Fee Simple thereto, thereby divesting out of the first party all right and equity that the first party may have in and to said property, and vesting the same in the purchaser or purchasers aforesaid. . . . (Emphasis added)
Defendant / Bank / Creditor Exhibit 6.
Black's Law Dictionary defines thereby as follows:
thereby, adv. By that means; in that way >Blofeld stepped into the embassy and thereby found protection>.
Black's Law Dictionary 1517 (8th ed.2004).
"[P]owers contained in a deed to secure debt are matters of contract, and will be enforced as written." Hilton v. Millhaven Co., 158 Ga.App. 862, 282 S.E2d 415, 416 (1981).
In the Court's view, the deed to secure debt provides that Plaintiffs right and equity in his residence would be divested when the Bank gives the purchaser at foreclosure "good and sufficient title in Fee Simple." It is undisputed that the Bank gave Mr. Davis title to Plaintiffs residence after Plaintiff filed for bankruptcy relief. The Bank is bound by the terms of the deed to secure debt. The Court is persuaded that Plaintiffs interest in his residence was not divested before he filed for bankruptcy relief and that his right and equity in the residence are property of his bankruptcy estate. This conclusion is dispositive of the motions for summary judgment filed by Plaintiff, the Bank and Mr. Davis.
An order in accordance with this memorandum opinion will be entered this date.
NOTES
[1] Herbert Davis is the president of R & S Farms, Inc. The Court notes that R & S Farms, Inc. rather than Mr. Davis may be the proper defendant in this adversary proceeding.
[2] The Court questions but need not decide whether the notice of foreclosure was sent to the proper address.
[3] Bleckley County is adjacent to Pulaski County.
[4] Non-judicial foreclosures are conducted on the first Tuesday of each month. September 6 was the first Tuesday in September of 2005.
[5] A foreclosure deed is a Deed Under Power Of Sale.
[6] Plaintiff had met with an attorney and understood that a bankruptcy petition had been filed. It is undisputed, however, that Plaintiff did not file for bankruptcy relief until September 7, 2006.
[7] Plaintiff's ability to cure a default through his Chapter 13 Plan is not presently before the Court. 11 U.S.C.A § 1322(c)(1) (West 2004).
[8] Plaintiff contends that there are genuine issues of material fact as to whether the foreclosure sale was properly conducted. The Court is persuaded that Plaintiff's interest in his residence was not terminated before he filed for bankruptcy relief and therefore does not reach the question of whether the foreclosure was properly conducted.
[9] The deed to secure debt at issue is not on a form known as a "Fannie Mae/Freddie Mac Uniform Instrument." See F. Alexander, Georgia Real Estate Finance And Foreclosure Law, § 13-2, (2004 4th ed.)