S11G1728. TAMPA INVESTMENT GROUP, INC. et al.
v. BRANCH BANKING AND TRUST COMPANY, INC.
S11G1729. LEGACY COMMUNITIES GROUP, INC. et al.
v. BRANCH BANKING AND TRUST COMPANY, INC.
(723 SE2d 674)

CARLEY, Presiding Justice.

From 2005 to 2008, Branch Banking & Trust Company (BB&T) and its predecessors made 16 loans for residential housing development to two companies (Borrowers) which executed promissory notes and deeds to secure debt. The notes were guaranteed by various other companies (Guarantors) which, along with Borrowers, were all controlled by the same individuals. After default on the notes, BB&T gave Borrowers notice of foreclosure as to nine of the notes and purportedly conducted non-judicial foreclosures on June 2, 2009. BB&T was the sole and winning bidder but, three days later, notified Borrowers that it rescinded any notices or actions taken with respect to the foreclosure and that the foreclosure sale had not been and would not be consummated. On June 22, 2009, BB&T brought suit against Borrowers and Guarantors (Appellants) for more than $19 million then due under the notes. BB&T also raised fraudulent transfer claims, and the trial court entered an interlocutory injunction to preserve the status quo, which was affirmed by this Court in *SRB Investment Services v. Branch Banking and Trust Co.*, 289 Ga. 1 (709 SE2d 267) (2011). On cross-motions for partial summary judgment, the trial court held that BB&T's claims as to the nine notes were barred as improper deficiency actions due to its foreclosure sales on properties securing those notes and its failure to seek confirmation within 30 days of those sales as required by OCGA § 44-14-161 (a). The trial court further held that the Statute of Frauds does not bar BB&T's claims that the guaranty agreements entered in 2008 by three Guarantors (2008 Guarantors) made them liable not only on the notes executed in 2008 but also as additional guarantors on the notes which were executed prior to 2008.

The Court of Appeals reversed with respect to the former ruling and affirmed with respect to the latter. In Division 1 of its opinion, the Court of Appeals determined that acceptance of a bid at a foreclosure sale under power creates an oral contract which is subject to the Statute of Frauds, that BB&T, either as Borrowers' attorney-in-fact or as the creditor on the notes, never executed a deed under power conveying Borrowers' interest to itself or any writing showing that it had applied any foreclosure proceeds, and that rescinding the foreclosures did not harm Borrowers but left them in the same position as before the auctions. *Legacy Communities Group v. Branch Banking & Trust Co.*, 310 Ga. App. 466, 469-470 (1) (713 SE2d 670) (2011). Under these circumstances, the

Court of Appeals ruled, the transfer of Borrowers' rights of possession and equity of redemption to BB&T as the foreclosure sale purchaser never occurred and, thus, there had been no foreclosure sale, confirmation was therefore not required, and the failure to seek confirmation could not bar BB&T's claims. *Legacy Communities Group v. Branch Banking & Trust Co.*, supra at 470-471 (1). In Division 2 of its opinion, the Court of Appeals held that, although the 2008 guaranties failed to identify the pre-2008 notes with the specificity required under the Statute of Frauds, the 2008 Guarantors are estopped by BB&T's part performance from asserting that defense because BB&T performed an act essential to the contract by extending credit pursuant to the 2008 notes and because the 2008 Guarantors enjoyed the benefit of the bargain. *Legacy Communities Group v. Branch Banking & Trust Co.*, supra at 474-475 (2). In Case Number S11G1728, we granted certiorari to consider Appellants' contention that the Court of Appeals erred in Division 1. We granted certiorari in Case Number S11G1729 to consider the 2008 Guarantors' contention that the Court of Appeals erred in Division 2.

*Case Number S11G1728*

1. Appellants argue that the Court of Appeals, in holding that no valid foreclosure sale occurred, erroneously relied on its determination that BB&T did not satisfy the Statute of Frauds.

"A sale under the powers contained in a deed to secure debt divests the grantor of all title, and right of equity of redemption, to the lands described in the deed. [Cits.]" *Cummings v. Johnson*, 218 Ga. 559, 561 (3) (129 SE2d 762) (1963). See also *Federal Land Bank of Columbia v. Bank of Lenox*, 192 Ga. 543, 546 (2) (16 SE2d 9) (1941).

> Where a sale of land is made under a power contained in a security deed, and by permission of the grantor contained in the deed the grantee purchases the land at such sale, the grantor can not defeat the purchaser's right to have the sale fully consummated, by tender of the amount of his indebtedness to the grantee before the actual execution of the deed pursuant to the terms of the sale.

*Carrington v. Citizens Bank of Waynesboro*, 144 Ga. 52, 53 (4) (85 SE 1027) (1915). Such grantor becomes "a tenant at sufferance of [the grantee] by the terms of the security deed and operation of law when [the grantee] bid[s] in the property at the foreclosure sale. [Cit.]" *McKinney v. South Boston Sav. Bank*, 156 Ga. App. 114, 116 (4) (274 SE2d 34) (1980). Based on the foregoing precedent from this state's

appellate courts, United States Bankruptcy Courts have concluded that, under Georgia law, a debtor's equity of redemption terminates on the date that the foreclosure auction is held when the high bid is received. *In re Williams*, 393 B.R. 813, 820 (Bankr. M.D. Ga. 2008); *Sanders v. Amsouth Mortgage Co. (In re Sanders)*, 108 B.R. 847, 849 (Bankr. S.D. Ga. 1989); *Pearson v. Fleet Finance Center (In re Pearson)*, 75 B.R. 254, 255 (Bankr. N.D. Ga. 1985). Under that analysis, therefore, the Statute of Frauds is irrelevant to the determination of when the right of redemption held by a grantor of a security deed is extinguished. See *In re Pearson*, supra at 256 (On Motion to Reconsider). On the other hand, the Statute of Frauds is not irrelevant to all determinations in the foreclosure context. A sale under power of real estate at public outcry does not become binding as between the mortgagee and the purchaser unless a memorandum is made as prescribed by the Statute of Frauds. *Seymour v. Nat. Bldg. and Loan Assn.*, 116 Ga. 285 (1) (42 SE 518) (1902). See also *James v. Safari Enterprises*, 244 Ga. App. 813, 814 (537 SE2d 103) (2000). Appellants argue that counsel for BB&T prepared such memoranda in the present case. However, even if the Statute of Frauds was satisfied in that way, the memoranda alone do not preclude a subsequent suit by BB&T against Appellants.

"[T]his Court has long held that a creditor holding a promissory note secured by real property may either sue on the note or foreclose ' "until the debt is satisfied." ' [Cit.]" (Emphasis omitted.) *SRB Investment Services v. Branch Banking and Trust Co.*, supra at 6 (3) (a). Indeed, such creditor "is not put to an election of remedies as to whether he shall sue upon the note or exercise a power of sale contained in the deed, but he may do either, or 'pursue both remedies concurrently until the debt is satisfied.' [Cits.]" *Oliver v. Slack*, 192 Ga. 7, 8 (2) (14 SE2d 593) (1941). See also *REL Development v. Branch Banking & Trust Co.*, 305 Ga. App. 429, 431 (1) (699 SE2d 779) (2010); 5 Baxter Dunaway, *L. Distressed Real Est.* § 67A:17. Thus, if the creditor first obtains a money judgment, he may thereafter exercise the power of sale so long as that judgment has not been successfully enforced by execution or the underlying debt otherwise satisfied. *Taylor v. Thompson*, 158 Ga. App. 671, 672 (282 SE2d 157) (1981); *Norwood Realty Co. v. First Fed. Sav. and Loan Assn.*, 99 Ga. App. 692, 694 (1) (109 SE2d 844) (1959). Conversely, if the creditor first elects to exercise the power of sale, he may subsequently proceed to sue on the note if the foreclosure sale is not fully consummated and as a result none of the underlying debt is satisfied. *Federal Deposit Insurance Corp. v. Dye*, 642 F2d 837, 843 (II) (5th Cir. 1981) (applying Georgia law). Of course, if the foreclosure sale is consummated and a portion of the underlying debt is thereby satisfied, then pursuant to OCGA § 44-14-161 (a) the

creditor must timely seek confirmation before a deficiency action is authorized. Compare *Georgia R. Bank & Trust Co. v. Griffith*, 176 Ga. App. 198, 200 (2) (335 SE2d 417) (1985) (confirmation not required if creditor had already obtained money judgment prior to foreclosure); *Taylor v. Thompson*, supra at 673.

This analysis is entirely consistent with OCGA § 44-14-161 (a), as that statute explicitly applies only "[w]hen any real estate is sold on foreclosure" and, being in derogation of common law, must be strictly construed. *Taylor v. Thompson*, supra at 672, 673. Thus, we cannot infer any requirement for confirmation where a foreclosure sales contract is formed but the sale is never consummated. See *129 Acres v. Atlanta Business Bank*, 311 Ga. App. 462, 463 (716 SE2d 536) (2011). Until a deed under power is transferred and consideration is passed, "the sale itself has not occurred; there is only a contract to buy and sell." *Federal Deposit Insurance Corp. v. Dye*, supra. See also *Champs-Elysses v. Fulton Fed. Sav. & Loan Assn.*, 247 Ga. 127, 129 (2) (274 SE2d 482) (1981) (quoting *Smith v. Oliver*, 219 Ga. 720, 724 (4) (135 SE2d 862) (1964)); 5 Dunaway, supra at § 67A:32; Frank S. Alexander, *Ga. Real Estate Finance and Foreclosure Law* § 8:9 (2011-2012 ed.) ("The deed under power of sale is the instrument by which the foreclosing creditor, as attorney-in-fact for the debtor, transfers the debtor's equity of redemption to the foreclosure sale purchaser."). Therefore, prior to consummation, the real estate cannot be considered to have been "sold on foreclosure." OCGA § 44-14-161 (a).

Furthermore, where, as here, the bidder and the creditor are the same entity and "the deeds have not been delivered nor have the notes been marked paid in full, it is clear that the proceeds of sale have not been transferred in the cases before us." *Federal Deposit Insurance Corp. v. Dye*, supra. Compare *In re Williams*, supra at 818 (distinguishing *Dye* as not addressing the issue of when the debtor's right of redemption is extinguished); *In re Sanders*, supra at 849, fn. 3; *Leggett v. Morgan (In re Morgan)*, 115 B.R. 399, 402 (Bankr. M.D. Ga. 1990). "It would be inappropriate to say the proceeds were automatically transferred when bid to the entity as creditor, for that would force the entity to sue for specific performance of the contract rather than sue on the note if it preferred the latter." *Federal Deposit Insurance Corp. v. Dye*, supra at 843 (II), fn. 14. Moreover, as the Court of Appeals ruled, Appellants have not been harmed. They still hold "the same rights in the land that [they] held before the attempted sale, and it is still as much subject to the debt as it was before the attempted sale. There was no evidence of negligence, fraud, collusion, or bad faith of any kind on the part of" BB&T. *Brooke v. Union Central Life Ins. Co.*, 65 Ga. App. 160, 161 (15 SE2d 557) (1941). Thus, there were no valid foreclosure sales to prevent

BB&T from suing on the notes in the absence of confirmation under OCGA § 44-14-161, regardless of whether there was a valid executory sales contract which satisfied the Statute of Frauds.

*Case Number S11G1729*

2. In Division 2 of its opinion, the Court of Appeals initially held that

> the 2008 guaranties failed to identify the pre-2008 notes with the specificity required for a promise to answer for another's debt to be binding on the guarantor under the Statute of Frauds because there is nothing in the guaranties or any other documents referenced in them from which the amounts promised to be paid and the date the debts became due could be determined. [Cits.]

*Legacy Communities Group v. Branch Banking & Trust Co.*, supra at 474 (2).

> The statute of frauds requires that a promise to answer for another's debt, to be binding on the promisor, "must be in writing and signed by the party to be charged therewith." OCGA § 13-5-30 (2). [Cit.] This requirement has been interpreted to mandate further that a guaranty identify the debt, the principal debtor, the promisor, and the promisee. [Cits.]

*John Deere Co. v. Haralson*, 278 Ga. 192, 193 (599 SE2d 164) (2004). The Court of Appeals has "required that 'a guaranty must, either in itself or in connection with other writings, identify the debt which is the subject of the promise [and] indicate knowledge of both the amount promised to be paid and the time the debt becomes due.' [Cit.]" *Brzowski v. Quantum Nat. Bank*, 311 Ga. App. 769, 771 (1) (717 SE2d 290) (2011).

In applying this requirement, the Court of Appeals has upheld guaranties where no exact promissory note or instrument was identified in the guaranty itself, but where the guaranty identified the debt as " '[p]resent and [f]uture [d]ebt,' " " 'all obligations under any notes however and whenever incurred or evidenced, now existing or hereafter contracted or acquired,' " " 'any and all invoices for services rendered,' " or " 'any and all materials billed.' " *Brzowski v. Quantum Nat. Bank*, supra at 771-772 (1), fn. 8. In *John Deere Co. v. Haralson*, supra at 193, 195, we held that the required elements were contained in a guaranty which identified the debt as

" 'past and/or future extension of credit' to the principal debtor."

In the present case, the 2008 guaranties identified the pre-2008 notes to which they applied as any prior loan made by BB&T to certain named or described borrower entities, and those guaranties expressly encompassed the obligations under any and all notes and other indebtedness owed by such borrowers to BB&T now or hereafter. *Legacy Communities Group v. Branch Banking & Trust Co.*, supra at 472-473 (2). These references to existing debts include any pre-2008 note which can be identified completely thereby without the aid of parol evidence. See *Cox v. U. S. Markets*, 278 Ga. App. 287, 288 (1) (628 SE2d 701) (2006). The "language is clear and unmistakable and specifically includes the prior liability of the third part[ies] as well as the liability [on the 2008 notes] which [the 2008 Guarantors] admit[ ]." *Ellis v. Chem-Tech Finishers*, 140 Ga. App. 180, 181 (230 SE2d 340) (1976) (surety contract covered " 'all liabilities of . . . (third party) in connection with all contracts made with you, whether heretofore made or may hereafter be made' "). Although the 2008 guaranties do not individually and

> specifically identify the debt guaranteed, we find that the plain meaning of the language . . . shows that [the] obligations under the Guarant[ies] had no temporal limitation and applied to debts owed by [the named or described borrowers] to [BB&T] that were in existence at the time the Guarant[ies] [were] signed as well as [the] future debts created after the Guarant[ies'] execution. [Cit.]

*Brzowski v. Quantum Nat. Bank*, supra at 771 (1).

Because the Court of Appeals erroneously held that the 2008 guaranties did not sufficiently identify any pre-2008 notes, the Court of Appeals failed to address the 2008 Guarantors' contention that the 2008 guaranties did not sufficiently identify Legacy Investment Group, LLC (LIG) as the debtor on three of the pre-2008 notes which were executed in 2005. As that alternative contention is no longer moot, we remand the case to the Court of Appeals to address it. However, if that Court determines that the 2008 guaranties do not fully satisfy the Statute of Frauds with respect to the 2005 notes executed by LIG, it should not again apply the "part performance" exception to the Statute of Frauds. See OCGA § 13-5-31 (3). The Court of Appeals' analysis in that regard was erroneous for the reasons set forth below.

A contract which is either not reduced to writing or defectively so reduced and which is "sought to be enforced based on part performance must be certain and definite in all essential particulars. [Cit.]" *Lemming v. Morgan*, 228 Ga. App. 763, 764 (1) (492 SE2d

742) (1997). See also *Troutman v. Troutman*, 297 Ga. App. 62, 65 (1) (676 SE2d 787) (2009). " '[T]he part performance must be part performance of an essential element of the contract sought to be proved, and of a character which would render it a fraud on the (performing party) if the (other party) refused to comply.' [Cit.]" *Bridges v. Reliance Trust Co.*, 205 Ga. App. 400, 402 (2) (422 SE2d 277) (1992). See also *Fields v. Lanier*, 294 Ga. App. 355, 357 (1) (670 SE2d 145) (2008). If an essential element of the contract "is sought to be proved, the part performance asserted must be sufficient as a matter of law to remove the agreement from the Statute of Frauds by establishing the missing essential element of the contract. [Cit.]" 3 John R. Kennel, *Ga. Jur. Property* § 27:17 (citing *Valiant Steel & Equipment v. Roadway Express*, 205 Ga. App. 237, 239 (2) (421 SE2d 773) (1992)).

In the present case, whether the essential element sought to be supplied is the identity of the pre-2008 notes being guaranteed or of the debtor on the 2005 notes, BB&T's extension of credit pursuant to the 2008 notes clearly does not constitute such partial performance as will tend to prove the identity of either other notes executed in prior years or the debtors thereon. See *Studdard v. George D. Warthen Bank*, 207 Ga. App. 80-81 (1) (427 SE2d 58) (1993); *Norris v. Downtown LaGrange Development Authority*, 151 Ga. App. 343, 344 (2) (259 SE2d 729) (1979); *Forest Services v. Fidelity & Casualty Co. of N.Y.*, 120 Ga. App. 600-601 (171 SE2d 743) (1969). "This being so, the part performance asserted by [BB&T] is insufficient as a matter of law to remove the agreement from" the Statute of Frauds. *Norris v. Downtown LaGrange Development Authority*, supra. See also *Valiant Steel & Equipment v. Roadway Express*, supra. Furthermore, any forbearance by BB&T from collecting prior loans when they became due does not constitute performance. "Mere non-action is not performance, either partial or complete, and will not, therefore, take a parol contract out of the statute of frauds." *Augusta Southern R. Co. v. Smith & Kilby Co.*, 106 Ga. 864 (2) (33 SE 28) (1899).

Moreover, Georgia adheres to the view that the extension of credit to the debtor does not constitute such part performance as to take a promise to answer for the debt of another out of the Statute of Frauds. See 73 AmJur2d *Statute of Frauds* § 380. That view was eloquently explained by Justice Bleckley as follows:

> The true consideration of the collateral contract with [the guarantor] was the incurring of the risk of dealing with [the debtor] on a credit, and of accepting him as a debtor. The moment that the debt arose, this risk was incurred .... Regarding the actual incurring of the risk as the perfor-

mance or the part performance contemplated by the Code, there would be no case in which a parol promise to answer for the debt of another would not be obligatory so that the promise was made before the creation of the debt, and acted upon in extending the credit involved in its creation. Such a construction of the Code would throw open to mere parol evidence all that numerous class of guaranties which look to prospective indebtedness, and thus work a stupendous change in the prior law as embodied in the English statute of frauds. If the collateral promise is to be binding simply because the credit has been extended on the faith of it, and because the creditor, trusting to the promise, has put himself in a situation to be injured if it is not performed, then oral contracts of guaranty are as obligatory as written ones, in perhaps a large majority of the actual cases which arise in business, and the statute of frauds, in one of its most important features, is wiped out. . . . It would be very idle to interpret the Code as saying, in effect, "a parol promise to answer for the future debt of another is not obligatory unless the debt shall be created, in which event it is obligatory."

*McGaughey Bros. v. Latham*, 63 Ga. 67, 69-70 (1) (1879). See also *Rowell v. Smith*, 102 N.W. 1, 9 (Wis. 1905). "[T]o hold that a promisee, upon proof of reliance and detriment, could enforce an oral undertaking by a promisor who derives no direct benefit from the transaction and is only conditionally obligated to perform would effectually repeal" the Statute of Frauds with respect to promises to answer for the debt of another. *Colonial Ford Truck Sales v. Schneider*, 325 SE2d 91, 94 (Va. 1985).

Accordingly, although the Court of Appeals correctly held that none of BB&T's claims is barred by its failure to seek confirmation after the foreclosure auctions, the Court of Appeals did err in holding that the 2008 guaranties did not sufficiently identify any pre-2008 notes and that the 2008 Guarantors were estopped by BB&T's part performance from asserting a Statute of Frauds defense to BB&T's claims against them on pre-2008 notes. Therefore, the judgment of the Court of Appeals is affirmed in Case Number S11G1728, and, in Case Number S11G1729, the judgment is affirmed in part and reversed in part, and the case is remanded to the Court of Appeals with direction that it consider whether the 2008 guaranties fully satisfy the Statute of Frauds with respect to the 2005 notes executed by LIG, and for further proceedings not inconsistent with this opinion, including determination of which, if any, specific claims are barred and of how the trial court should properly dispose of the

732

cross-motions for partial summary judgment.

*Judgment affirmed in Case Number S11G1728. Judgment affirmed in part and reversed in part, and case remanded with direction in Case Number S11G1729. Hunstein, C. J., Benham, Thompson, Melton, and Nahmias, JJ., and Judge J. Stephen Schuster concur. Hines, J., not participating.*

DECIDED MARCH 19, 2012.

*Chilivis, Cochran, Larkins & Bever, John K. Larkins, Jr., John D. Dalbey, Fellows LaBriola, Eugenia W. Iredale, Steven M. Kushner,* for appellants.

*Greenberg Traurig, Jennifer B. Moore, Mark G. Trigg, Lee B. Hart,* for appellee.