CITIZENS AND SOUTHERN BANK *v.* REALTY SAVINGS AND TRUST COMPANY *et al.; et vice versa.*
PERKINS MANUFACTURING COMPANY *v.* REALTY SAVINGS AND TRUST COMPANY *et al.*

Nos. 6219, 6225, 6227.   September 26, 1928.

*Paul T. Chance,* for Citizens and Southern Bank.
*William K. Miller,* for Perkins Manufacturing Company.
*Hamilton Phinizy, James B. Mulherin, William H. Fleming.* and *Sam F. Garlington,* contra.

Atkinson, J.   Claude T. Burnett conveyed certain realty to Mrs. Henrietta Sancken as security for a loan.   Subsequently he executed an executory contract of sale of the same realty to H. C. Bryson Jr., the consideration of which was a small payment in cash, assumption of the Sancken debt, and Bryson's promissory notes for the balance of the purchase-price.   The contract provided also that if Bryson should fail to pay taxes and insurance on the property, Burnett should pay them and the amount thereof should become a part of the principal debt, and when the whole

debt should be paid "down to" the amount of the Sancken debt Burnett should execute a deed for the land if Bryson should so desire. After this transaction Burnett executed security deeds for the same land, which in time of execution and recording were in the following order: first to the Realty Savings & Trust Company, second to the Augusta Lumber Company, and third to the Perkins Manufacturing Company. The Augusta Lumber Company deed was to secure a pre-existing debt, and stated that it was subject to "a $4000.00 loan" [the Trust Company debt?]; but with this exception none of them mentioned the others or the Sancken deed or the Bryson contract. Prior to execution of the above deeds to the Trust Company, the Lumber Company, and the Perkins Company, Burnett indorsed in blank the purchase-money notes received from Bryson, and delivered them, with his duplicate of the sale contract with Bryson, to the Citizens and Southern Bank as collateral security for his pre-existing debts and debts for future loans that were subsequently made to him. There was no written transfer of the sale contract, nor was the contract recorded at the time of its delivery to the bank. The contract was not recorded at the time the three above-mentioned subsequent security deeds were executed but was held by the bank, and after the last of them was recorded it was recorded. The money loaned Burnett by the Trust Company was used to pay Mrs. Sancken's debt, and the Sancken deed was canceled of record. Burnett became insolvent and absconded, and Bryson was insolvent. In an equitable suit for receiver and adjustment of priorities, the realty was sold at receiver's sale and a fund produced for distribution, not quite sufficient to pay the Trust Company debt but more than sufficient to pay severally the debts to the Lumber Company or to the Bank or to Perkins. The controlling questions are as to the right of priority as between the parties last mentioned; the auditor to whom the case was referred having found priorities first in favor of the Trust Company, and in favor of the other parties in the order above named.

1. A deed to land, executed to secure a debt under the provisions of the Civil Code, § 3306, will vest legal title to the land in the grantee and his assigns, subject to be defeated by payment of the debt. The grantor in such a deed retains the right of possession and the right of redemption by payment of the debt, and

consequently an equitable estate in the land which may be assigned or subjected to payment of his debts. *Citizens Bank of Moultrie* v. *Taylor,* 155 *Ga.* 416 (117 S. E. 247). Applying the above principle, Burnett, as maker of the security deed to Sancken, retained an equitable interest in the land upon which his subsequent executory contract of sale to Bryson operated.

2. As a general rule, where secured purchase-money notes are transferred by indorsement in blank and delivery to a third person, the transfer will carry the security or such equitable interest therein as will authorize an action by the transferee to subject property to which the security attaches to payment of the notes. *Carter* v. *Johnson,* 156 *Ga.* 207 (5, 6) (119 S. E. 22); *Cross* v. *Citizens Bank & Trust Co.,* 160 *Ga.* 647 (8) (128 S. E. 898). Under application of the principle just stated, the Citizens and Southern Bank, in virtue of the indorsement of the purchase-money notes and their delivery with the executory contract of sale between Bryson and Burnett, became transferee of the notes and equitable successor of Burnett relatively to his interest in the land.

3. The Civil Code (1910), § 3306, contains statutory provision for making deeds to secure debt, and § 3307 contains the provisions: "Every such deed shall be recorded in the county where the land conveyed lies. . . Such deeds . . not recorded remain valid against the persons executing them, but are postponed to all liens created or obtained, or purchases made, prior to the actual record of the deed. . . If, however, the younger lien is created by contract, and the party receiving it has notice of the prior unrecorded deed, . . or if the purchaser has the like notice, then the title conveyed by the older deed . . shall be held good against them." See also *Cross* v. *Citizens Bank and Trust Co.,* supra; *Randall* v. *Hamilton,* 156 *Ga.* 661 (119 S. E. 595, 32 A. L. R. 342).

(*a*) Under the above rule, the executory contract of purchase by Bryson from Burnett would not affect the rights of subsequent purchasers for value from Burnett, without notice thereof, who received deeds from Burnett and duly recorded them prior to record of the contract with Bryson, but would affect such purchasers if they had notice of the executory contract.

(*b*) Burnett's transfer of the notes to the Bank and transfer of the contract of sale by delivering the notes with his indorsement

in blank thereon, and delivering the contract of sale without any written transfer thereof, would not affect a subsequent grantee of the land from Burnett, who purchased without notice of the transfer to the Bank, although he had notice of the executory contract of sale.

4. Where in an equitable proceeding the evidence, though conflicting, is sufficient to sustain a finding of fact by the auditor to whom the case has been referred, it is not an abuse of discretion by the court to refuse to approve an exception of fact and overrule an exception of law to the finding. *Faucetl* v. *Rogers,* 152 *Ga.* 168 (108 S. E. 798); *Peyton* v. *McMillan,* 145 *Ga.* 179 (7) (88 S. E. 937); *Mayor &c. of Gainesville* v. *Jaudon,* 145 *Ga.* 299 (3) (89 S. E. 210).

5. "Adverse possession of land is notice of whatever facts in reference to the title would be developed by inquiry of the person in possession, the presumption being that inquiry of him will disclose how and under what right he holds possession, and therefore lead to the discovery of the real adverse holder, whether himself or another for or under whom he holds possession; and in the absence of such inquiry, the presumption is that had it been made, the right, title, or interest under which the possessor held would have been discovered. . . The effect of possession is to put a prospective purchaser upon inquiry; and if it can be shown that he made such inquiry and followed it up in good faith, and was informed that the title was in another, from whom he purchased, the presumption arising from possession will be overcome." *Austin* v. *Southern Home Building &c. Asso.,* 122 *Ga.* 439 (50 S. E. 382).

(a) The foregoing principle was applied in *Georgia State Building &c. Asso.* v. *Faison,* 114 *Ga.* 655, 659 (40 S. E. 760), where it was held that a purchaser from a vendor of land whose vendee is in possession under a bond for title is charged with notice of every fact which "due inquiry" would bring to his knowledge.

(b) In *Austin* v. *Southern Home B. & L. Asso.,* supra, there was a discussion in the opinion as to what would amount to due inquiry. It was there said that while the company "did not in terms address the inquiry to Austin, ' Are you the owner of this property ? ' it did what was equivalent thereto, and received what was in effect a response that he was the owner. He came to it and

represented that the record title was in him. He in effect asserted by his application for a loan that he was the owner, and under such circumstances it was not necessary, in order to make complete the inquiry which the law required, that there should be a direct interrogatory addressed to him, 'Are you in reality the owner of this property?' His conduct was such as to indicate that specific inquiry would have brought no other response than that given in effect by his application for a loan, based upon assertions by him that he was the true owner of the property. Possession of land is not conclusive upon the purchaser as to the rights of the possessor or those under whom he claims. The effect of it is to put him upon inquiry; and when it is shown that prior to the purchase from the holder of the record title he followed up the inquiry in good faith, and received no information which would impeach the apparent rights of the holder of the record title, the presumption arising from possession by another will be overcome." See also *Dix* v. *Wilkinson,* 149 *Ga.* 103, 106 (99 S. E. 437).

6. In this case the auditor's finding of fact shows that at the time of the loan by the Trust Company to Burnett, Bryson was in actual possession of the land; that there was a written application for a loan of $6,500, signed "H. C. Bryson Jr., by C. T. Burnett;" that the application was delivered to the company by Burnett, and was approved for $4,000; that in discussing the application for the loan the agent of the company asked Burnett "what Bryson had to do with the property," and, upon being told that Bryson was going to buy it, requested that Bryson be brought to see him; that several days later Burnett and Bryson went to the office of the company, and Bryson stated to the agent of the company "that he was going to buy the property, and that the proposed loan was agreeable to him," and that the purpose of the loan was to pay off the Sancken debt; and it was agreed by Burnett that the Trust Company was to have first security on the property; that on examination of the title to the property by the attorney for the company he found that the record title was in Burnett, with the exception of the Sancken deed; that when the attorney saw that the application was signed as indicated above, he sent for Burnett and was assured that Bryson had no present interest in the property; that Bryson was his tenant, and was contemplating purchasing the property. In the auditor's findings of law it was stated

that when the agent "sent for Bryson and Bryson told him ' he was going to buy the property, ' this was all that he could do. The law says that he had notice of Bryson's rights, and when Bryson explains his possession by stating why he was there, no further inquiry was necessary; and consequently the Trust Company exercised due diligence and complied with all requirements of law. . . As the Trust Company loaned $4,000.00 on the property and as its deed is the prior deed on record, it is legally entitled to be paid first." The evidence brought up in the record shows a conflict of evidence upon the question of diligence; but notwithstanding the conflict, the evidence stated by the auditor in his report as to the statements of Bryson was sufficient, under the principles stated in division 5(b) of this opinion relating to due diligence, to authorize the finding of the auditor as to the priority of the Trust Company.

7. The auditor also found that the deed to the Lumber Company was given as security for a pre-existing debt, but that such deed was executed and recorded prior to the date of the deed to the Perkins Company, and that Bryson was not in possession at the time of such conveyances, and consequently was entitled to rank second in priority; holding that the case does not fall within the principle of *Hubert* v. *Merchants Bank,* 137 *Ga.* 70 (72 S. E. 505), relating to the rights of a subsequent purchaser based on a pre-existing debt as against creditors of the vendor. There was no error in this ruling.

8. The auditor also found as a matter of fact that Bryson was in possession of the land at the time of the conveyance by Burnett to the Perkins Company, and upon such finding held as a matter of law that such possession was notice to the Perkins Company of Bryson's interest in the land, and that the Bank as transferee of the purchase-money notes executed by Bryson to Burnett was entitled to third rank in priority. There was no evidence that amounted to an inquiry by Perkins Company concerning Bryson's possession of the land, but the evidence was sufficient to authorize the finding by the auditor that Bryson was in possession of the land at the time of such subsequent conveyance. Under the principles set forth in the preceding divisions of this opinion, the auditor was authorized to find that the Bank was entitled to third rank in priority.

9. Upon principles already stated, the evidence was sufficient to support the auditor's findings of fact relating to the claim of the Perkins Company, and on the basis thereof fixing the priority of the Perkins Company as ranking in the fourth place.

10. The trial judge on demurrer struck so much of the answer of the Trust Company in the nature of a cross-petition as sought the preference based on its deed from Burnett. Exceptions pendente lite to that judgment were filed, and error was assigned thereon in the cross-bill of exceptions. Notwithstanding the ruling of the court on demurrer, the auditor found priority for the Trust Company based on the deed, and the final decree entered by the judge sustained the ruling of the auditor. Under the principles hereinabove stated, it was erroneous to strike the portion of the cross-petition as complained of in the cross-bill of exceptions; but, the defendant having preserved its rights and procured a reversal of that ruling, the final judgment will not be reversed, because on the further trial of the case the conveyance was set up and sustained as a basis for the priority as declared in the final judgment.

11. The foregoing divisions relate to the controlling questions in the case, and the trial judge did not err in sustaining the findings of the auditor, and in entering a final decree setting up the priorities of the several parties as indicated above.

*Judgment affirmed on both main bills of exceptions, and reversed on the cross-bill of exceptions. All the Justices concur, except Gilbert, J., disqualified.*