A03A1141. BOYER et al. v. WHIDDON.

(589 SE2d 709)

BARNES, Judge.

Morris Boyer and James Singleton ("defendants") appeal from the superior court's summary judgment order creating an "easement by implication for ingress and egress" on property owned by the defendants for the use of an adjoining property with no access to a public road. Because we find the record before the trial court was insufficient to make a determination as to whether an easement arose by implication of law, we reverse.

OCGA § 44-9-1 outlines the following methods in which a private way can be acquired:

> The right of private way over another's land may arise from an express grant, from prescription by seven years' uninterrupted use through improved lands or by 20 years' use through wild lands, by implication of law when the right is necessary to the enjoyment of lands granted by the same owner, or by compulsory purchase and sale through the superior court in the manner prescribed by Article 3 of this chapter.

In this case, plaintiff, Edward Whiddon, sought an easement by implication of law. When determining whether an easement arose by implication after the division of lands by the same owner, the order in which the dominant and servient estates were transferred is critical to the analysis. See Pindar, Ga. Real Estate Law & Procedure, § 8-16 (5th ed. 1998); *Bruno v. Evans*, 200 Ga. App. 437, 440 (3) (408 SE2d 458) (1991). "The land used by or 'serving' the grantee [recipient] of the easement is known as the servient tenement; the land served by or benefiting from the easement is known as the dominant tenement." Pindar, Ga. Real Estate Law & Procedure, § 8-2.

> Thus, a way of necessity arises in this State by implication of law under Code § 85-1401 [(currently OCGA § 44-9-1)] when the common owner sells the dominant estate first and retains the servient estate. The common owner is impliedly deemed to have granted an easement to pass over the servient estate. However, if the common owner sells the servient estate first . . . he has deeded everything within his power to deed and retains no easement in the servient estate. Therefore, when the common grantor subsequently deeds the dominant estate to a third party, the third party can obtain no higher interest than that of the grantor and receives no easement over the servient estate.

(Citations and punctuation omitted.) *Bruno*, 200 Ga. App. at 440 (3) (b).

The timing issue also becomes critical when, as in this case, foreclosure sales are involved.

> A deed to secure debt conveys legal title in the real property to the grantee [(lender)] with the grantor [(borrower)] retaining an equitable estate. Because legal title remains in the grantee until the terms of the security deed are satisfied, all subsequent conveyances of the real property after the deed to secure debt is executed remain subject to the security deed. . . . A valid foreclosure of a security deed not only vests legal title in the purchaser, it also divests all of the grantor's rights in the property as well as the rights of those claiming through the grantor.

*Eagle Glen Unit Owners Assn. v. Lee*, 237 Ga. App. 240, 241-242 (1) (a) (514 SE2d 40) (1999). Thus, if an easement is created by the borrower after giving a deed to secure debt, a foreclosure on the deed to secure debt will extinguish the easement. Id. at 242.

In this case, the record shows that the adjoining land owned by the plaintiff and the defendants was once owned by one individual, George Chandler, "until both parcels were foreclosed on in 1975." The parties have varying accounts of the division of the property. According to the plaintiff, Trust Company Bank held a security interest on all of the property owned by Chandler and later secured a second on only a portion of the same property. According to plaintiff, Trust Company later assigned its first security interest to Alexander Hamilton Life Insurance Company, and the remaining property passed to Trust Company directly by way of the foreclosure.

According to defendants, Chandler secured a loan from Alexander Hamilton with a portion of the land and pledged the remaining

land to Trust Company as security for a separate loan. The plaintiff in this case purchased his landlocked portion of Chandler's property from Trust Company in 1981 and the defendants also purchased their portion of Chandler's property in 1981 from Alexander Hamilton.

The record fails to show, however, the security deeds given by Chandler to Trust Company and the dates of these security deeds, any assignment of Trust Company's security deeds to Alexander Hamilton and the date of any such transfer, any security deed given by Chandler directly to Alexander Hamilton and the date of any such security deed, and the dates of the foreclosures by Trust Company and Alexander Hamilton. Without this critical information about the timing of the property transfers, the trial court could not properly determine whether an easement by implication of law was created, when any such easement was created, and whether it was extinguished by foreclosure. As a result, we reverse the trial court's order granting summary judgment and its finding that "the Plaintiff is entitled to an easement by way of implication for ingress and egress across Defendants' currently existing private road."

*Judgment reversed. Andrews, P. J., and Adams, J., concur.*

DECIDED NOVEMBER 14, 2003.

*Smith, Welch & Brittain, William A. White*, for appellants.
*Meadows & Futch, Bonnie L. Baker*, for appellee.