A11A0696. LEGACY COMMUNITIES GROUP, INC. et al.
v. BRANCH BANKING & TRUST COMPANY.
A11A0697. BRANCH BANKING & TRUST COMPANY v. TAMPA
INVESTMENT GROUP, INC. et al.

(713 SE2d 670)

ELLINGTON, Chief Judge.

In this litigation pending in the Superior Court of Fulton County, Branch Banking & Trust Company asserts claims, inter alia, for the breach of a series of promissory notes against the borrowers and against parties that guaranteed the notes, which are all related corporate entities. The parties filed cross-motions for partial summary judgment. After a hearing, the trial court entered partial summary judgment in favor of the bank on certain issues and in favor of the borrowers and guarantors on others, as detailed below. Both sides appeal part of the trial court's ruling. For the reasons explained below, we affirm in part and reverse in part.

In order to prevail on a motion for summary judgment under OCGA § 9-11-56,

> the moving party must show that there exists no genuine issue of material fact, and that the undisputed facts, viewed in the light most favorable to the nonmoving party, demand judgment as a matter of law. Moreover, on appeal from the denial or grant of summary judgment the appellate court is to conduct a de novo review of the evidence to determine whether there exists a genuine issue of material fact, and whether the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law.

(Citations omitted.) *Benton v. Benton*, 280 Ga. 468, 470 (629 SE2d 204) (2006).

At issue are 16 promissory notes executed between 2005 and 2008 by the bank as the lender and by either Legacy Investment Group, LLC ("Legacy Investment") or Tampa Investment Group, Inc. ("Tampa Investment") as the borrower for the development of residential subdivisions in Georgia. The notes were secured by deeds

to secure debt and were guaranteed by either two or three of the following entities: Legacy Communities, LLC ("Legacy Communities"), Tampa Financial Company, Inc. ("Tampa Financial"), Legacy Communities Group, LLC ("Legacy Group"), SRB Investment Services, LLLP ("SRB Investment"), and SFB Investment, LP ("SFB Investment"). After the borrowers defaulted on the notes, the bank provided notice of foreclosure as to nine of the notes and, at foreclosure auctions conducted on June 2, 2009, was the sole and winning bidder. Three days later, the bank notified the borrower that it rescinded any actions taken with respect to foreclosure and that the foreclosures were not and would not be consummated. On June 22, 2009, the bank filed the instant action against the borrowers and guarantors. Because of common issues on appeal, we consider the notes in the following related groups:

(A) Three notes executed in 2005, 2006, or 2007, either by Legacy Investment[1] or by Tampa Investment[2] as the borrower and guaranteed by Tampa Financial and either by Legacy Communities[3] or by Legacy Group,[4] which were foreclosed upon and the properties sold at auction on June 2, 2009.

(B) Five notes executed in 2005, 2006, or 2007, either by Legacy Investment[5] or by Tampa Investment[6] as the borrower and guaranteed by Tampa Financial and by either Legacy Communities[7] or by Legacy Group,[8] which were *not* the subject of foreclosure proceedings.

(C) Six notes executed in 2008, by Tampa Investment as the borrower and guaranteed by Legacy Group, SRB Investment, and SFB Investment (the "2008 guarantors"), which were foreclosed upon and the properties sold at auction on June 2, 2009.[9]

(D) Two notes executed in 2008, by Tampa Investment as the borrower and guaranteed by the 2008 guarantors,

---

[1] Note No. 25.

[2] Note Nos. 534 and 536.

[3] Note Nos. 25 and 534.

[4] Note No. 536.

[5] Note Nos. 26 and 23/28.

[6] Note Nos. 533, 535, and 537/538.

[7] Note Nos. 26, 23/28, and 533.

[8] Note Nos. 535 and 537/538.

[9] Note Nos. 546, 550, 551, 552, 553, and 556.

which were *not* the subject of foreclosure proceedings.[10]

In its complaint, the bank asserted claims against the borrower and against the guarantors for amounts due under each of the notes.

After a hearing on the parties' motions for summary judgment, the trial court determined that, because the bank failed to seek confirmation of the foreclosure sales within 30 days after the auctions, the bank's claims as to the Group A and Group C notes were barred as improper deficiency actions under OCGA § 44-14-161 (a).[11] Accordingly, the trial court granted the borrowers' and guarantors' motions for partial summary judgment and denied the bank's motion as to those nine notes. In Case No. A11A0697, the bank appeals, and, for the reasons explained in Division 1, infra, we reverse in part.

In addition, the trial court determined that guaranties executed in 2008 by the 2008 guarantors in connection with the Group C and Group D notes (collectively, the "2008 notes") were effective under the Statute of Frauds to make the 2008 guarantors liable as additional guarantors of the Group A and Group B notes (collectively, the "pre-2008 notes"). Accordingly, the trial court granted the bank's motion for partial summary judgment and denied the 2008 guarantors' motion on this issue. Because the trial court otherwise granted partial summary judgment in favor of the borrowers and guarantors on the three pre-2008 notes as to which the bank offered the winning bid at the foreclosure auctions (the Group A notes), the trial court granted judgment to the bank only as to the five pre-2008 notes as to which the bank had not initiated foreclosure proceedings (the Group B notes). In Case No. A11A0696, the 2008 guarantors appeal, and, for the reasons explained in Division 2, infra, we affirm in part.

*Case No. A11A0697*

1. The bank contends that, although it offered the winning bid at

---

[10] Note Nos. 547 and 548.

[11] When any real estate is sold on foreclosure, without legal process, and under powers contained in security deeds, mortgages, or other lien contracts and at the sale the real estate does not bring the amount of the debt secured by the deed, mortgage, or contract, no action may be taken to obtain a deficiency judgment unless the person instituting the foreclosure proceedings shall, within 30 days after the sale, report the sale to the judge of the superior court of the county in which the land is located for confirmation and approval and shall obtain an order of confirmation and approval thereon.

OCGA § 44-14-161 (a).

auction as to the Group A and Group C notes, it abandoned foreclosure proceedings before consummating any foreclosure sale. As a result, the bank contends, the trial court erred in ruling that the bank's claims as to those notes were barred as improper deficiency actions by the bank's failure timely to seek confirmation under OCGA § 44-14-161 (a). We agree.

When a borrower gives a lender a deed to secure debt, the borrower grants and conveys outright legal title in the subject real property to the lender (the grantee) and takes "a bond for title back to the grantor upon the payment of the debt." OCGA § 44-14-60; see also *West Lumber Co. v. Schnuck*, 204 Ga. 827, 835 (1) (51 SE2d 644) (1949). Thus, the borrower retains the right to regain or redeem legal title by payment of the secured indebtedness; the borrower also retains the right of possession. *West Lumber Co. v. Schnuck*, 204 Ga. at 835 (1); *C & S Bank v. Realty Savings &c. Co.*, 167 Ga. 170, 171-172 (1) (144 SE 893) (1928); *Boyer v. Whiddon*, 264 Ga. App. 137, 138 (589 SE2d 709) (2003).[12] The borrower's equitable estate or title may be assigned or subjected to payment of the borrower's other debts. *C & S Bank v. Realty Savings &c. Co.*, 167 Ga. at 171-172 (1). A deed to secure debt generally gives the lender a power of attorney authorizing it to sell the property if the borrower defaults on the secured debt, applying the proceeds first to the satisfaction of the debt. Daniel F. Hinkel, 2 Pindar's Ga. Real Estate Law and Procedure, § 21-2 (6th ed., updated 2011). A properly conducted sale on foreclosure under power transfers the borrower's right of possession and its equitable estate to the foreclosure sale purchaser. *Cummings v. Johnson*, 218 Ga. 559, 561 (3) (129 SE2d 762) (1963).[13]

When a person who is conducting a nonjudicial foreclosure sale pursuant to a power of sale in a security deed accepts a bid, an oral contract is created. *Moody v. Mendenhall*, 238 Ga. 689, 690, 692-693 (6) (234 SE2d 905) (1977); *James v. Safari Enterprises*, 244 Ga. App. 813, 814-815 (537 SE2d 103) (2000). Because such a contract conveys an interest in land, it is subject to the Statute of Frauds unless it falls into one of the recognized exceptions. *James v. Safari Enterprises*, 244 Ga. App. at 814-815; OCGA § 13-5-30 (4);[14] see OCGA §§

---

[12] See generally Daniel F. Hinkel, 2 Pindar's Ga. Real Estate Law and Procedure, §§ 21-13, 21-14, 21-40, 21-49 (6th ed., updated 2011).

[13] See OCGA § 44-14-160 et seq. (foreclosure); see generally Daniel F. Hinkel, 2 Pindar's Ga. Real Estate Law and Procedure, § 21-89 (6th ed., updated 2011); Frank S. Alexander, Ga. Real Estate Finance and Foreclosure Law, §§ 8:1, 8:9 (2010-2011 ed.).

[14] OCGA § 13-5-30 (4) provides that, to make "[a]ny contract for sale of lands, or any interest in, or concerning lands" binding on the promisor, "the promise must be in writing and signed by the party to be charged therewith or some person lawfully authorized by him[.]"

13-5-31;[15] 23-2-131.[16] In this case, the bank, acting in its capacity as the borrower's attorney-in-fact, accepted the bids it made at the foreclosure auctions as to the Group A and Group C notes, but it did not in that capacity execute a deed under power or any other document conveying the borrower's interest to itself. In addition, the bank, acting in its capacity as the creditor on the promissory notes, did not execute any writing showing that it had applied any foreclosure proceeds to eliminate or reduce the borrower's obligations under the secured promissory notes. Rather, three days after the auctions, the bank, as the creditor and as the winning bidder, notified the borrower that it rescinded any actions taken with respect to foreclosure and that the foreclosures were not and would not be consummated. The borrower was not harmed by the aborted foreclosure proceedings but, rather, was left in exactly the same position as it was in before the auctions. Although the bank conducted and bid at foreclosure auctions of the real property that secured the Group A and Group C notes, we conclude that, under the circumstances, the conveyance which defines a nonjudicial foreclosure, that is, the transfer of the borrower's right of possession and its equity of redemption to the bank as the foreclosure sale purchaser,[17] never occurred.[18] Because, by definition, the confirmation procedure

---

[15] OCGA § 13-5-31 provides:
> The provisions of [OCGA §] 13-5-30 do not extend to the following cases:
> (1) When the contract has been fully executed;
> (2) Where there has been performance on one side, accepted by the other in accordance with the contract;
> (3) Where there has been such part performance of the contract as would render it a fraud of the party refusing to comply if the court did not compel a performance.

[16] OCGA § 23-2-131 provides:
> (a) The specific performance of a parol contract as to land shall be decreed if the defendant admits the contract or if the contract has been so far executed by the party seeking relief and at the instance or by the inducements of the other party that if the contract were abandoned he could not be restored to his former position.
> (b) Full payment alone accepted by the vendor, or partial payment accompanied with possession, or possession alone with valuable improvements, if clearly proved in each case to have been done with reference to the parol contract, shall be sufficient part performance to justify a decree.

See generally Daniel F. Hinkel, 2 Pindar's Ga. Real Estate Law and Procedure, § 21-80 (6th ed., updated 2011); Frank S. Alexander, Ga. Real Estate Finance and Foreclosure Law, § 8:5 (2010-2011 ed.).

[17] As the guarantors contend, the bank already had title to the properties pursuant to the deeds to secure debt, and such a conveyance of the borrower's equitable interest, therefore, would have resulted in a merger of the whole estate in the bank. See OCGA § 44-6-2 ("If two estates in the same property shall unite in the same person in his individual capacity, the lesser estate shall be merged into the greater.").

[18] We note that some federal courts have held that, under Georgia law, a borrower is divested of its equitable right of redemption at the moment that the creditor as the borrower's attorney-in-fact accepts the foreclosure sale purchaser's high bid. See, e.g., *Sanders v. AmSouth Mtg. Co. (In the Matter of Sanders)*, 108 B.R. 847, 849-850 (Bankr. S.D. Ga. 1988);

has no application where there has been no foreclosure sale, OCGA § 44-14-161 (a), the trial court erred in ruling that the bank's claims were barred as to the Group A and Group C notes by the bank's failure to seek confirmation after the June 2, 2009 foreclosure auctions.

### *Case No. A11A0696*

2. The 2008 guarantors contend that the 2008 guaranties did not identify the pre-2008 notes with the specificity required by the Statute of Frauds. As a result, they contend, any obligation they undertook in the 2008 guaranties with regard to the pre-2008 notes is unenforceable, and, therefore, the trial court erred in granting the bank's motion for partial summary judgment and in denying their motion on this issue.

The 2008 guaranties identified the bank as the promisee and

---

*Pearson v. Fleet Finance Center (In the Matter of Pearson)*, 75 B.R. 254 (Bankr. N.D. Ga. 1985). In those cases, a borrower, after a foreclosure auction, attempted to cure a default and reinstate a mortgage and, thereby, to defeat the foreclosure purchaser's right to have the sale fully consummated. See also *Carrington v. Citizens Bank of Waynesboro*, 144 Ga. 52, 53 (4) (85 SE 1027) (1915) ("Where a sale of land is made under a power contained in a security deed, and by permission of the grantor contained in the deed the grantee purchases the land at such sale, the grantor can not defeat the purchaser's right to have the sale fully consummated, by tender of the amount of his indebtedness to the grantee before the actual execution of the deed pursuant to the terms of the sale."). These cases are inapposite here, however, where the borrower does not seek to exercise its equitable right of redemption by paying the indebtedness in full or even to cure its default and resume paying as agreed. See *Fed. Deposit Ins. Corp. v. Dye*, 642 F2d 837 (5th Cir. Unit B 1981) ("Where the bidder [at a foreclosure auction] and [the] creditor are the same entity, there must be an objective standard to determine when or if the transfer [of the borrower's interest] has occurred." The creditor's winning bid at auction, created only an oral contract to buy and sell. And, where the creditor had not thereafter marked the notes "paid in full" or transferred any foreclosure deeds, no foreclosure sale had occurred, and the creditor was entitled to pursue a suit on the notes.); *Chase Home Finance v. Geiger (In the Matter of Geiger)*, 340 B.R. 422 (Bankr. M.D. Ga. 2006) (accord); *Leggett v. Morgan (In the Matter of Morgan)*, 115 B.R. 399 (Bankr. M.D. Ga. 1990) (Although no foreclosure deed was executed, the borrower lost his equitable right of redemption when the foreclosure sale purchaser tendered the amount bid.). Similarly, the cases cited by the borrowers and the guarantors for the holding that a buyer at a foreclosure sale holds title unless and until the foreclosure is properly set aside do not control the outcome in a case such as this, where the foreclosure sale was not completed. See *Womack v. Columbus Rentals*, 223 Ga. App. 501, 503 (3) (478 SE2d 611) (1996) (The purchaser at a foreclosure sale under a power of sale in a security deed is the sole owner of the property until and unless the sale is set aside. Therefore, following foreclosure of a deed to secure debt given by a landlord, a lessor cannot raise alleged defects in the foreclosure sale as a defense to a proceeding for possession by the foreclosure sale purchaser.); *McKinney v. South Boston Savings Bank*, 156 Ga. App. 114, 115 (2) (274 SE2d 34) (1980) (accord); see also *Vaughan v. Moore*, 202 Ga. App. 592, 592-593 (415 SE2d 47) (1992) ("A creditor who holds a promissory note secured by a deed is not put to an election of remedies as to whether he shall sue upon the note or exercise a power of sale contained in the deed, but he may do either, or pursue both remedies concurrently until the debt is satisfied." If the creditor pursues the foreclosure remedy "to an initial conclusion," however, the creditor may only continue to pursue the remedy of obtaining a judgment against the debtor if the creditor seeks confirmation of the foreclosure sale as required by OCGA § 44-14-161.) (citations and punctuation omitted).

Legacy Group, SRB Investment, and SFB Investment as the guarantors and provided, in pertinent part, as follows:

1. Bank has previously made numerous loans (collectively the "Prior Loan") to various borrower entities owned (directly or indirectly) or controlled by Guarantor. Such borrower entities (individually "Borrower" and collectively "Borrowers") include those entities whose names are set forth on Exhibit "A" attached hereto and made a part hereof, but shall also include other entities whose names are not on Exhibit "A", and for purposes of this Guaranty Agreement, which are owned or controlled (directly or indirectly) by Guarantor ("controlled" as used herein meaning direct or indirect ownership of more than 50% of the ownership interests of such entity) and which, as of the date hereof, have outstanding indebtedness or other obligations or liability under the Prior Loan owed to Bank.

2. Each of the Prior Loans made to any Borrower was requested by, and directly benefits Guarantor, and Bank would not have been willing to make any Prior Loan to any Borrower without the full and unconditional guaranty of payment by Guarantor to Bank of all liability and indebtedness under each Prior Loan. Both Bank and Guarantor intended and still intend that Guarantor voluntarily, and for a valid consideration, has previously guaranteed each of the Prior Loans made by Bank to each and every Borrower. To the extent no such prior guaranty instrument was signed, or was improperly signed, it was an oversight and is intended by both Bank and Guarantor to be corrected hereby.

3. Based on certain review of documentation by Bank, Bank has requested, and Guarantor has agreed to reaffirm and ratify Guarantor's guaranty of each of the Prior Loans in favor of Bank, and, to the extent of any prior legal deficiency in any prior guaranty instrument, including the absence of any such guaranty, Guarantor hereby guarantees all indebtedness under any such Prior Loan.

. . .

Now, therefore, for good and valuable consideration, the receipt and sufficiency of which are acknowledged by the

parties hereto, Guarantor agrees as follows:

Guarantor hereby unconditionally guarantees the full and prompt payment when due, whether by acceleration or otherwise, and at all times hereafter, of: (a) all indebtedness of any Borrower owed to Bank under any Prior Loan, which indebtedness includes the full principal amount, including any future advances under any Prior Loan, . . . plus the interest due on such Prior Loans to the extent provided for in any Prior Loans . . . ; (b) notwithstanding anything to the contrary herein, in addition to Guarantor guaranteeing all indebtedness under any and all Prior Loan, Guarantor hereby absolutely and unconditionally guarantees to Bank and its successors and assigns the due and punctual payment of any and all notes, drafts, debts, obligations and liabilities, primary or secondary (whether by way of endorsement or otherwise), of Borrowers, at any time, now or hereafter, incurred with or held by Bank, together with interest, as and when the same become due and payable, whether by acceleration or otherwise, in accordance with the terms of any such notes, drafts, debts, obligations or liabilities or agreements evidencing any such indebtedness, obligation or liability including all renewal, extensions and modifications thereof[;] . . . and (f) all other indebtedness now or hereafter owed by any Borrower to the Bank, however incurred.

. . .

Guarantor agrees that until each and every one of the covenants and agreements of this Guaranty Agreement is fully performed, Guarantor's obligations hereunder shall not be released, in whole or in part, by any action or thing which might, but for this provision of this Guaranty Agreement, be deemed a legal or equitable discharge of a surety or guarantor, or by reasons of any waiver, extension, modification, forbearance or delay or other at or omission on the part of the Bank, or its failure to proceed promptly or otherwise, or by reason of any action taken or omitted by the Bank, . . . or by reason of any further dealings among the Borrower, the Bank and any other guarantor, surety or other party, and Guarantor hereby expressly waives and surrenders any defense to the performance of the undertakings of Guarantor hereunder based upon any of the foregoing acts, omissions, things, agreements or waivers; it being the purpose and intent of the parties hereto that the covenants, agreements and all undertakings hereunder be

absolute, unconditional and irrevocable under any and all circumstances.

As the 2008 guarantors contend, the 2008 guaranties failed to identify the pre-2008 notes with the specificity required for a promise to answer for another's debt to be binding on the guarantor under the Statute of Frauds because there is nothing in the guaranties or any other documents referenced in them from which the amounts promised to be paid and the date the debts became due could be determined.[19] A contract that is subject to the Statute of Frauds but fails to satisfy its requirements may nevertheless be enforced, however, where there has been performance of the contract by one party that is accepted by the other or where there has been partial performance by one party such that it would result in a fraud on that party if the court did not compel performance. OCGA § 13-5-31 (2), (3). Enforcing an agreement, despite its failure to satisfy the Statute of Frauds, "is allowed upon the principle of estoppel." (Citations omitted.) *Nowell v. Mayor &c. of Monroe*, 177 Ga. 648, 652 (1) (171 SE 136) (1933). See also OCGA § 13-3-44 (a) ("A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise."). It is incumbent upon the party seeking to enforce such an agreement to show "mutuality of action or its equitable equivalent[,]" that is, to show both that it performed one or more acts "in pursuance of and on the faith of the contract" and that its partial performance was accepted by the other party in accordance with the agreement. (Citations omitted.) *Nowell v. Mayor &c. of Monroe*, 177 Ga. at 652-653 (1). A contract "will be taken out of the operation of the [S]tatute of [F]rauds whenever one party to the contract performs some act essential to the contract that

---

[19] See OCGA § 13-5-30 (2) (A promise to answer for another's debt, to be binding on the guarantor, must be in writing and signed by the guarantor.); *John Deere Co. v. Haralson*, 278 Ga. 192, 193 (599 SE2d 164) (2004) (To be binding, a guaranty must identify the debt, that is, the amount promised to be paid and the time the debt becomes due, as well as the principal debtor, the guarantor, and the creditor.); *Cox v. U. S. Markets*, 278 Ga. App. 287, 288 (1) (628 SE2d 701) (2006) (The Statute of Frauds is satisfied where a signed guaranty refers to other writings, which can be identified completely by this reference without the aid of parol evidence, and where the group of writings, construed together, contain "all the terms of the bargain.") (citation and punctuation omitted); see also *LaFarge Bldg. Materials v. Pratt*, 307 Ga. App. 767, 769 (706 SE2d 131) (2011) ("Even where the intent of the parties is manifestly obvious, where any of these names[, that is, the name of the principal debtor, the promisor, and the promisee,] is omitted from [a guaranty,] the agreement is not enforceable because it fails to satisfy the [S]tatute of [F]rauds.") (citations and punctuation omitted); *Capital Color Printing v. Ahern*, 291 Ga. App. 101, 107 (1) (661 SE2d 578) (2008) (A court applies the ordinary rules of contract construction to an alleged guaranty to determine whether the essential elements of a guaranty are present and to determine the extent of the guarantor's liability thereunder.).

results in loss or injury to him and in benefit to the other party."
(Citation omitted.) *Bagwell v. Milam*, 9 Ga. App. 315, 319 (4) (71 SE
684) (1911).[20]

In this case, the express terms of the 2008 guaranties, exten-
sively quoted above, unequivocally establish that, when the 2008
guarantors executed those documents, several corporate entities
which the guarantors owned or controlled, including Tampa Invest-
ment (which was specifically listed in Exhibit A to the guaranties),[21]
owed the bank money under prior loans; that the 2008 guarantors
executed the 2008 guaranties with the express purpose of inducing
the bank to extend additional credit to Tampa Investment; and that
the 2008 guarantors agreed to a condition imposed by the bank for
such additional credit, specifically, that the 2008 guarantors also
guarantee the pre-existing debts of Tampa Investment and other
corporate entities the 2008 guarantors owned or controlled. Further,
it is undisputed that the bank performed its obligations under the
2008 guaranties when it extended Tampa Investment credit pursu-
ant to the 2008 notes. Thus, the bank performed an act essential to
the contract that resulted in a detriment to it and in a benefit to the
guarantors. The bank having performed as agreed, and the 2008
guarantors having thus enjoyed the benefit of their bargain, the
guarantors are estopped from asserting a Statute of Frauds defense
to the enforcement of the guaranties. *L. Henry Enterprises v.
Verifone, Inc.*, 273 Ga. App. 195, 198 (2) (614 SE2d 841) (2005)
(Where a guaranty misnamed the principal debtor, but where the
circumstances showed that, if the guarantor did not intend to
guarantee the note the lender sued upon, then the guarantor
perpetrated a fraud in executing the guaranty, the guarantor was
estopped from asserting the Statute of Frauds defense to escape
liability on the guaranty agreement.); *Murray v. Pratt-Dudley Build-
ers Supply Co.*, 176 Ga. App. 225, 226-227 (335 SE2d 443) (1985)
(Although a guaranty omitted the name of the plaintiff creditor as
the promisee, the defendant guarantor was estopped from asserting
a Statute of Frauds defense where the guarantor freely admitted
that he signed a letter of guaranty in favor of the creditor, that he

[20] See also *Haehn v. Alheit*, 212 Ga. App. 252, 254 (3) (441 SE2d 529) (1994) ("Partial
performance . . . will vitiate the [S]tatute of [F]rauds [when it is] substantial and essential to
the contract and [when it] results in a benefit to one party and a detriment to the other.")
(citation and punctuation omitted).

[21] It is undisputed that, at the relevant times, Stephen R. Been and Stephen F. Been
together owned and controlled Legacy Group; that Legacy Group owned and controlled Legacy
Communities; that Legacy Communities owned and controlled Legacy Investment; that
Stephen R. Been and Stephen F. Been together owned and controlled Tampa Investment; that
Stephen R. Been owned and controlled SRB Investment; and that Stephen F. Been owned and
controlled SFB Investment.

intended to guarantee the debts of his corporation, and that his corporation received goods from the creditor, and, therefore, the harm sought to be prevented by the Statute of Frauds did not exist.). Consequently, the trial court did not err in granting the bank's motion for partial summary judgment on this issue.[22]

In summary, we hold as follows:

The bank's claims on the Group A notes are not barred as improper deficiency actions by the bank's failure to seek confirmation within 30 days after the June 2, 2009 foreclosure auctions. Furthermore, the bank's claims against the 2008 guarantors on the Group A notes are not barred under the Statute of Frauds.

The bank's claims on the Group B notes against the 2008 guarantors are likewise not barred under the Statute of Frauds.

The bank's claims on the Group C notes are not barred as improper deficiency actions by the bank's failure to seek confirmation within 30 days after the June 2, 2009 foreclosure auctions.

The bank's claims on the Group D notes are not barred under either theory.

*Judgment affirmed in part and reversed in part. Miller, P. J., and Doyle, J., concur.*

DECIDED JULY 1, 2011 — 

*Fellows & LaBriola, Steven M. Kushner, Eugenia W. Iredale, Chilivis, Cochran, Larkins & Bever, John K. Larkins*, for appellants.

*Greenberg Traurig, Jennifer B. Moore, Mark G. Trigg, Lee B. Hart*, for appellee.

---

[22] It does not automatically follow that all eight of the pre-2008 notes satisfied the definition of a "prior loan" in the 2008 guaranties. Case No. A11A0696, however, presents only the issue of whether the Statute of Frauds protects the 2008 guarantors from liability as to those notes.