**THIRD DIVISION**
**ELLINGTON, C. J.,**
**DOYLE, P. J., and MILLER, J.**

NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

**June 29, 2012**

# In the Court of Appeals of Georgia

A11A0696. LEGACY COMMUNITIES GROUP, INC. et al. v. JE-030
  BRANCH BANKING & TRUST COMPANY.

ELLINGTON, Chief Judge.

This case concerns, among other claims, Branch Banking & Trust Company's claim that the 2008 guarantors[1] are liable under guaranties they executed in 2008, in connection with several loans the bank was contemporaneously making to Tampa Investment Group, Inc. ("Tampa Investment"), for three loans the bank made in 2005 to Legacy Investment Group, LLC ("Legacy Investment").[2] See *Legacy Communities*

---

[1] In this opinion, "2008 guarantors" refers to Legacy Communities Group, Inc. ("Legacy Communities"), SRB Investment Services, LLLP, and SFB Investment, LP. See *Legacy Communities Group v. Branch Banking & Trust Co.*, 310 Ga. App. 466 (713 SE2d 670) (2011).

[2] The specific loans were designated Notes 25, 26, and 23/28. See Id. at 467, nn. 1, 3, 5, 7.

*Group v. Branch Banking & Trust Co.*, 310 Ga. App. 466 (713 SE2d 670) (2011)

("*Legacy I*"). In ruling on the parties' cross-motions for partial summary judgment,

the trial court determined, inter alia, that the 2008 guaranties were effective under the

Statute of Frauds, OCGA § 13-5-30 (2), to make the 2008 guarantors liable for the

2005 loans to Legacy Investment. See *Legacy I*, 310 Ga. App. at 468. The trial court

granted the bank's motion for partial summary judgment and denied the 2008

guarantors' motion on this issue, and the 2008 guarantors appealed to this Court. See

id. Contrary to the trial court's ruling, we concluded in Division 2 of our opinion in

*Legacy I* that the 2008 guaranties did not identify the pre-2008 notes with the

specificity required for a promise to answer for another's debt to be binding on the

guarantor under the Statute of Frauds. Id. at 474 (2). We concluded, however, that the

2008 guarantors were estopped from asserting a Statute of Frauds defense to the

enforcement of the guaranties by the bank's performance of its obligations under the

guaranties. Id. at 474-475 (2). Accordingly, we affirmed the trial court's order in favor

of the bank. Id. at 476 (2). Our holding regarding estoppel made it unnecessary to

reach the 2008 guarantors' alternative contention that the 2008 guaranties did not

sufficiently identify Legacy Investment as the principal debtor on any pre-2008 notes

and that, therefore, the guaranties were unenforceable under the Statute of Frauds as to Notes 25, 26, and 23/28. Id. at 476 (2).

The Supreme Court of Georgia granted the 2008 guarantors' petition for writ of certiorari, which was docketed as Case No. S11G1729. The Supreme Court determined that we erred in holding that "the 2008 guaranties did not sufficiently identify any pre-2008 notes" to be enforceable against the guarantors under the Statute of Frauds. *Tampa Investment Group v. Branch Banking & Trust Co.*, 290 Ga. 724 (2) (723 SE2d 674) (2012) ("*Tampa*"). Further, the Supreme Court determined that we erred in holding that the 2008 guarantors were estopped from asserting a Statute of Frauds defense to the bank's claims against them on pre-2008 notes. Id. The Supreme Court therefore reversed our judgment in Division 2 of *Legacy I*, and remanded the case, directing this Court to consider the issue of whether the 2008 guaranties sufficiently identify Legacy Investment as the debtor on Notes 25, 26, and 23/28.

*Tampa*, 290 Ga. at 731 (2).[3] Accordingly, we vacate Division 2 of our previous opinion, *Legacy I*, 310 Ga. App. at 471-476 (2), and take up that issue now.

As the Supreme Court explained, under the Statute of Frauds and cases applying the Statute, a promise to answer for another's debt is only enforceable against the promisor if it identifies the debt, the principal debtor, the promisor, and the promisee. *Tampa*, 290 Ga. at 728 (2). It is well settled that a guaranty must identify the principal debtor *by name*. See *Builder's Supply Corp. v. Taylor*, 164 Ga. App. 127, 128 (296 SE2d 417) (1982) (Because "a contract of guaranty . . . [is] required to [be] *entirely* in writing under the Statute of Frauds[,]" a contract of guaranty that omits the name of the principal debtor "has no validity[,]" and parol evidence is not admissible to prove the identity of the principal debtor, even where the guaranty is manifestly intended to indemnify the promisee from loss and is otherwise complete and unambiguous and where the putative guarantor admits executing the document.) (citations omitted; emphasis supplied).

---

[3] We note that the Supreme Court of Georgia also granted the 2008 guarantors' (and other litigants') petition for a writ of certiorari, which was docketed in the Supreme Court as Case No. S11G1728 and consolidated with Case No. S11G1729, to consider an issue that we addressed in Division 1 of our opinion. Upon consideration, the Supreme Court affirmed that portion of our decision. *Tampa*, 290 at 725-728 (1) (Case No. S11G1728, decided March 19, 2012).

4

Where [a] guaranty omits the name of the principal debtor, of the promisee, or of the promisor, the guaranty is unenforceable as a matter of law. Even where the intent of the parties is manifestly obvious, where any of these names is omitted from the document, the agreement is not enforceable because it fails to satisfy the [S]tatute of [F]rauds. Moreover, a court must strictly construe an alleged guaranty contract in favor of the guarantor. The guarantor's liability may not be extended by implication or interpretation. And parol evidence is not admissible to supply any missing essential elements of a contract required to be in writing by our [S]tatute of [F]rauds. Thus, this Court is not authorized to determine the identity of the principal debtor, of the promisee, or of the promisor by inference as this would entail consideration of impermissible parol evidence.

(Citations, punctuation, and footnotes omitted.) *Dabbs v. Key Equip. Finance*, 303 Ga. App. 570, 572-573 (694 SE2d 161) (2010).[4]

In this case, the 2008 guaranties entirely failed to refer to Legacy Investment by name. On the issue of those debts of another, in addition to notes that were being

---

[4] See also *McDonald v. Ferguson Enterprises, Inc.* 274 Ga. App. 526, 526-527 (1) (618 SE2d 45) (2005) (accord); *Fontaine v. Gordon Contractors &c.*, 255 Ga. App. 839, 839-840 (567 SE2d 324) (2002) (accord); *Roden Electrical Supply v. Faulkner*, 240 Ga. App. 556, 556-557 (1) (524 SE2d 247) (1999) (accord); *Sysco Food Svcs. v. Coleman*, 227 Ga. App. 460, 461-462 (489 SE2d 568) (1997) (accord); *Ellis v. Curtis-Toledo, Inc.*, 204 Ga. App. 704, 705 (2) (420 SE2d 756) (1992) (accord); *Northside Bldg. Supply v. Foures*, 201 Ga. App. 259, 259-260 (411 SE2d 87) (1991) (accord).

contemporaneously executed by Tampa Investment, for which the 2008 guarantors agreed to answer under the 2008 guaranties, the 2008 guaranties provided, in pertinent part, as follows:

> [The] Bank has previously made numerous loans (collectively the "Prior Loan") to various borrower entities owned (directly or indirectly) or controlled by [the 2008 guarantors]. Such borrower entities (individually "Borrower" and collectively "Borrowers") include those entities whose names are set forth on Exhibit "A" attached hereto and made a part hereof, but shall also include other entities whose names are not on Exhibit "A", and for purposes of this Guaranty Agreement, which are owned or controlled (directly or indirectly by [the 2008 guarantors] ("controlled" as used herein meaning direct or indirect ownership of more than 50% of the ownership interests of such entity) and which, as of the date hereof, have outstanding indebtedness or other obligations or liability under the Prior Loan owed to [the] Bank.

Although Tampa Investment was listed in the attached Exhibit A, Legacy Investment was not. It is undisputed that, when the 2008 guarantors executed the guaranties, one of them, Legacy Communities, owned or controlled Legacy Investment, directly or indirectly, and that, at that time, Legacy Investment had outstanding indebtedness or other obligations or liability under notes owed to the bank, that is, Notes 25, 26, and 23/28. See *Legacy I*, 310 Ga. App. at 475 (2), n. 21. One can infer that Legacy Investment was one of the unnamed borrower entities so described, however, only by considering evidence extrinsic to the 2008 guaranties, such as the deposition

6

testimony of Stephen R. Been and Stephen F. Been, the two individuals who were Legacy Communities' officers and only shareholders. Such parol evidence is not admissible to supply the name of the principal debtor under *Builder's Supply Corp. v. Taylor* and its progeny cited above.[5] Because the 2008 guaranties omitted the name

_____

[5] As the Supreme Court explained, the requirement under the Statute of Frauds that a guaranty must "identify the debt which is the subject of the promise and indicate knowledge of both the amount promised to be paid and the time the debt becomes due" does not mean that an "exact promissory note or instrument [must be] identified in the guaranty itself[.]" (Citations and punctuation omitted.) *Tampa*, 290 Ga. at 728 (2). As the Supreme Court explained, a guaranty that identifies the debt by such language as "'present and future debt,' 'all obligations under any notes however and whenever incurred or evidenced, now existing or hereafter contracted or acquired,' 'any and all invoices for services rendered,' . . . 'any and all materials billed,' [or] 'past and/or future extension of credit' to the principal debtor" is enforceable. Id. at 728-729 (2). See *Schroeder v. Hunter Douglas, Inc.*, 172 Ga. App. 897, 898-899 (2) (324 SE2d 746) (1984) ("[I]n order to satisfy the Statute of Frauds, the writing relied upon as a guaranty must, either in itself or in connection with other writings, identify the debt which is the subject of the promise, indicate knowledge of both the amount promised to be paid and the time the debt becomes due, and show who is the promisee as well as the promisor. . . . It is not necessary that the guaranty agreement contain in itself all of the requirements which the Statute of Frauds embraces. [Rather, if] the [guaranty] . . . refer[s] to any other writing which can be identified completely by this reference, without the aid of parol evidence, then the two or more writings may constitute a compliance with the statute. One can certainly execute a valid contract of guaranty whereby he guarantees the payment of future debts incurred by another party. The exact amount and the full terms of the indebtedness on an open account are not determinable at the time of the execution of such a guaranty agreement, and are often necessarily established by subsequent documentation.") (citations and punctuation omitted); see also *Duke v. KHD Deutz &c. Corp.*, 221 Ga. App. 452, 452-453 (471 SE2d 537) (1996) (Where a guaranty agreement was executed at the same time and in the course of the same transaction as a loan and security agreement and

7

of Legacy Investment, the guaranties are unenforceable against the guarantors for any preexisting debt of Legacy Investment because they fail to satisfy the Statute of Frauds to that extent.[6]

---

a stock pledge agreement, the three instruments could be read and construed together under the contemporaneous writing rule, OCGA § 24-6-3 (a), to discern the identity of the principal debtor.).

[6] See *Dabbs v. Key Equip. Finance*, 303 Ga. App. at 573-576 (A guaranty for payments due on an equipment lease was unenforceable against the guarantor where the guaranty, which was not attached to any lease at the time the guarantor executed it, referred only to the "Agreement" as the debt, which "Agreement" was not defined, described, or identified; referred to the principal debtor only as the "customer," with no further clue as to who that "customer" might be; and referred to the promisee only as "we" or "us," with no identification of that entity or entities.); *McDonald v. Ferguson Enterprises*, 274 Ga. App. at 526-527 (1), nn. 2-3(A guaranty was unenforceable against the guarantor where a credit application referenced the principal debtor as the "Applicant," but no entity was identified as the "Applicant." The name of the entity alleged to be the principal debtor appeared in the document only in the section of the credit application entitled "Billing/Shipping Information."); *Roden Electrical Supply v. Faulkner*, 240 Ga. App. at 556-557 (1) (A guaranty was unenforceable against the guarantor where a credit application referenced the principal debtor as the "above business," but no entity was identified in the credit application as "the business." The entity alleged to be the principal debtor appeared in the document only as the "billable party."); *Sysco Food Svcs. v. Coleman*, 227 Ga. App. at 460-463 (A guaranty was unenforceable against the guarantor where an account agreement identified the alleged principal debtor as the "purchaser," and a form guaranty, which appeared in the same document with the account agreement, contained a space for "_____ Company," ostensibly the principal debtor, but the line was left blank, and a space for the name of the person individually guaranteeing the indebtedness was also left blank.). Cf. *John Deere Co. v. Haralson*, 278 Ga. 192, 194 (599 SE2d 164) (2004) (A guaranty was enforceable against the guarantor where the document identified the guarantor as the "undersigned," and the guarantor's name

We recognize that this ruling may fail to effectuate the parties' actual intent in executing the 2008 guaranties and may, therefore, represent a windfall to the 2008 guarantors.[7] We are bound, however, by the longstanding bright-line rule that a

appeared on the document in the form of his signature, over which was the designation "Guarantor(s)."); *Capital Color Printing v. Ahern*, 291 Ga. App. 101, 102-107 (1) (661 SE2d 578) (2008) (A guaranty was enforceable against two individuals based on the following: (1) a credit application showed that the promisee was extending credit to the "customer"; (2) a box captioned "CUSTOMER" contained the names of the individuals beside the designation "Your Name" and contained the name Quality Printing 4 Less beside the designation "Company Name"; (3) Quality Printing's business address, telephone and fax numbers, and Federal Employer Identification Number were also listed in the "customer" box; (4) immediately below the box were several other questions relating to the "customer," and the responses indicated that Quality Printing was a partnership, owned by the two individuals; (5) at the bottom of the credit application was a statement that the "undersigned guarantee[d] payment of any and all invoices for services rendered to customer"; (6) the two individuals signed below the statement; and, therefore, (6) the only reasonable conclusion was that Quality Printing was the principal debtor and the two individuals were the guarantors, as it would be nonsensical for the individuals to be "guaranteeing" their own debts.).

[7] As we observed in our previous opinion,
the express terms of the 2008 guaranties . . . unequivocally establish that, when the 2008 guarantors executed those documents, several corporate entities which the guarantors owned or controlled, including Tampa Investment (which was specifically listed in Exhibit A to the guaranties), owed the bank money under prior loans; that the 2008 guarantors executed the 2008 guaranties with the express purpose of inducing the bank to extend additional credit to Tampa Investment; and that the 2008 guarantors agreed to a condition imposed by the bank for such additional credit, specifically, that the 2008 guarantors also guarantee the pre-existing debts of Tampa Investment and other corporate entities the

guaranty that omits the name of the principal debtor is unenforceable as a matter of law and by the Supreme Court's direction that, "if [the] Court [of Appeals] determines that the 2008 guaranties do not fully satisfy the Statute of Frauds with respect to the 2005 notes executed by [Legacy Investment]," which we have done, we "should not again apply the 'part performance' exception to the Statute of Frauds." *Tampa*, 290

---

> 2008 guarantors owned or controlled. Further, it is undisputed that the bank performed its obligations under the 2008 guaranties when it extended Tampa Investment credit pursuant to the 2008 notes. Thus, [t]he bank . . . performed as agreed, and the 2008 guarantors . . . enjoyed the benefit of their bargain[.]"

(Footnote omitted.) *Legacy I*, 310 Ga. App. at 475 (2), rev'd, *Tampa*, 290 Ga. at 731 (2). It is not the purpose of the Statute of Frauds to allow a promisor to avoid willingly-undertaken contractual obligations. As the Supreme Court observed over a century ago, the Statute of Frauds'

> primary object is to prevent mistakes, frauds, and perjuries, by substituting written for oral evidence in the most important classes of contracts, [and, therefore,] the courts of equity have established the principle, which they apply under various circumstances, that [the Statute] shall not be used as an instrument for the accomplishment of fraudulent purposes; designed to prevent fraud, it shall not be permitted to work fraud. This principle lies at the basis of the doctrine concerning part performance, but is also enforced whenever it is necessary to secure equitable results.

(Citation and punctuation omitted.) *Kirkland v. Downing*, 106 Ga. 530, 536 (32 SE 632) (1899). Nonetheless, because "the extension of credit to the debtor does not constitute such part performance as to take a promise to answer for the debt of another out of the Statute of Frauds," the 2008 Guarantors were not estopped by the bank's part performance from asserting a Statute of Frauds defense to the bank's claims against them on the pre-2008 notes. (Citation omitted.) *Tampa*, 290 Ga. at 730 (2),

Ga. at 729 (2). For the reasons explained herein, the 2008 guarantors are entitled to judgment as a matter of law with regard to the bank's claims against them for the satisfaction of Notes 25, 26, and 23/28, and the trial court's order granting the bank's motion for partial summary on judgment on this issue must be reversed in this respect.

*Judgment affirmed in part and reversed in part, and case remanded. Doyle, P.J., and Miller, J., concur.*